**KARLIN TECHNOLOGY INC. and Sofamor Danek Group, Inc., Defendants–Appellants,**

**v.**

**SURGICAL DYNAMICS, INC., Plaintiff–Appellee.**

No. 97–1470.

United States Court of Appeals, Federal Circuit.

April 16, 1999.

Donald R. Dunner, Finnegan, Henderson, Farabow, Garrett & Dunner, L.L.P., of Washington, DC, argued for defendants-appellants. With him on the brief were Thomas H. Jenkins, Dirk D. Thomas, and Jeff E. Schwartz.

Constance S. Huttner, Skadden, Arps, Slate, Meagher & Flom LLP, of New York, NY, argued for plaintiff-appellee. With her on the brief was Paolo A. Ramundo. Of counsel on the brief was John C. Andres, Surgical Dynamics, Inc., of Norwalk, Connecticut.

Before RICH, CLEVENGER, and GAJARSA, Circuit Judges.

RICH, Circuit Judge.

Karlin Technology, Inc. and Sofamor Danek Group, Inc., (collectively, Karlin) appeal from the decision of the United States District Court for the Central District of California, Civil Action No. 95–CV–258, granting a motion for summary judgment of noninfringement of claims 1, 3, and 4 of U.S. Patent No. 5,015,247 (the '247 patent) in favor of Surgical Dynamics, Inc. (SDI). Because the accused device meets each of the properly construed limitations of the asserted claims, we reverse the decision and grant a summary judgment of literal infringement of claims 1, 3, and 4 in favor of Karlin. Because other issues are outstanding, including SDI's motion for a summary judgment that the '247 patent is invalid, we remand the case for further proceedings.

## BACKGROUND

Karlin Technology, Inc. is the assignee of the '247 patent, entitled "Threaded Spinal Implant," and Sofamor Danek Group,

Inc. is a licensee under that patent. The '247 patent describes spinal implants for stabilizing adjacent spinal vertebrae, and describes the invention generally as comprising a hollow cylinder with external threads along, and holes through, the cylindrical surface. The hollow portion of the implant is intended to be filled with bone or other osteogenic material so that, while the affected vertebrae are initially stabilized by the implants themselves, bone growth through the holes in the implants eventually fuse the vertebrae together.

SDI makes and sells the Ray TFC spinal implant, which comprises a hollow cylinder with external threads along, and holes through, the cylindrical surface. SDI sued Karlin for a declaratory judgment of noninfringement and invalidity of the '247 patent. Karlin counterclaimed for a judgment that the '247 patent was not invalid and that the Ray TFC implant infringes claims 1, 3, and 4 of the '247 patent, both literally and under the doctrine of equivalents. The parties filed opposing motions for summary judgment on the issues of claim construction and infringement, and SDI filed a motion for a summary judgment that the '247 patent is invalid.

Claims 1, 3, and 4, which Karlin alleges are infringed by the Ray TFC implant, read as follows (emphasis on the disputed limitation added):

1. A fusion implant comprising a cylindrical member having an outside diameter larger than the space between the two adjacent vertebrae to be fused and a *series of threads* on the exterior of the cylindrical member for engaging said vertebrae to maintain said implant in place, a plurality of openings in the cylindrical surface of said member, said outside diameter of said cylindrical member being substantially uniform over the entire length of the implant.

3. The implant of claim 1 in which said implant has a hollow portion for receiving autogenous bone for promoting bone ingrowth.

4. The implant of claim 3 in which said implant has a removable cap for covering said hollow portion.

The district court interpreted the "series of threads" limitation in claim 1 to require threads that are "highly specialized in that they are periodically interrupted, such that the tail ends of each of the tabs so formed are blunted and twisted so as to resist accidental unscrewing." The court held that, given this construction, there was no genuine issue of material fact and SDI was entitled to a summary judgment that the Ray TFC spinal implant did not infringe the asserted claims of the '247 patent, either literally or under the doctrine of equivalents. The court did not rule on SDI's motion for a summary judgment of invalidity. Karlin appeals the grant of summary judgment of noninfringement in favor of SDI.

## DISCUSSION

■ Our review of a grant of summary judgment of patent infringement or noninfringement is plenary. *See Cole v. Kimberly–Clark Corp.,* 102 F.3d 524, 528, 41 U.S.P.Q.2d 1001, 1004 (Fed.Cir.1996). We first determine whether "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Unidynamics Corp. v. Automatic Prod. Int'l, Ltd.,* 157 F.3d 1311, 1316, 48 U.S.P.Q.2d 1099, 1102 (Fed. Cir.1998) (quoting Fed.R.Civ.P. 56(c)). "In determining whether there is a genuine issue of material fact, the evidence must be viewed in the light most favorable to the party opposing the motion, with doubts resolved in favor of the opponent." *Chiuminatta Concrete Concepts, Inc. v. Cardinal Indus., Inc.,* 145 F.3d 1303, 1307, 46 U.S.P.Q.2d 1752, 1755 (Fed.Cir.1998).

■ "An infringement analysis entails two steps. The first step is determining the meaning and scope of the patent claims asserted to be infringed. The second step is comparing the properly construed claims to the device accused of infringing." *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 976, 34 U.S.P.Q.2d 1321, 1326 (Fed.Cir.1995) (en banc) (internal citation omitted), *aff'd*, 517 U.S. 370, 116 S.Ct. 1384, 134 L.Ed.2d 577 (1996). In this case, the claim construction issue centers on the phrase "series of threads" contained in claim 1. We first discuss the proper construction of that phrase and then compare the properly construed claims to the accused Ray TFC spinal implant. Because we conclude that the Ray TFC implant literally infringes the asserted claims, we do not consider whether the device infringes under the doctrine of equivalents.

## I. Claim Construction

■ Claim construction is a question of law, which we review de novo. *See Cybor Corp. v. FAS Techs., Inc.*, 138 F.3d 1448, 1456, 46 U.S.P.Q.2d 1169, 1174 (Fed. Cir.1998) (en banc). When construing a claim, a court should first look to the intrinsic evidence, *i.e.*, the patent itself, its claims, written description, and, if in evidence, the prosecution history. *See Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582, 39 U.S.P.Q.2d 1573, 1576 (Fed. Cir.1996). The court may receive extrinsic evidence to educate itself about the invention and the relevant technology, but the court may not use extrinsic evidence to arrive at a claim construction that is clearly at odds with the construction mandated by the intrinsic evidence. *See Key Pharms. v. Hercon Labs. Corp.*, 161 F.3d 709, 716, 48 U.S.P.Q.2d 1911, 1917 (Fed. Cir.1998).

■ The district court here construed "series of threads" to be limited to "highly specialized ... periodically interrupted [threads], such that the tail ends of each of the tabs so formed are blunted and twisted so as to resist accidental unscrewing."

This was error. As we discuss below, this limitation is properly construed as referring to continuous threading with a plurality of turns, as found on an ordinary screw or bolt.

### A. The Claim Language

■ Claim construction begins with the words of the claim. *See Bell Communications Research, Inc. v. Vitalink Communications Corp.*, 55 F.3d 615, 619–20, 34 U.S.P.Q.2d 1816, 1819 (Fed.Cir.1995). Where "series of threads" has no specialized meaning to persons of skill in the art (as the parties here agree), the ordinary meaning of those words to those skilled in the art controls, unless the evidence indicates that the inventor used them differently. *See Quantum Corp. v. Rodime, PLC*, 65 F.3d 1577, 1580, 36 U.S.P.Q.2d 1162, 1165 (Fed.Cir.1995).

The relevant definition of "series" is "a number of things or events of the same class coming one after the other in spatial or temporal succession." WEBSTER'S NINTH NEW COLLEGIATE DICTIONARY 1160 (1986). That is what the threads on screws do. "Thread" is defined as a *"continuous* helical rib, as on a screw or pipe." McGRAW-HILL DICTIONARY OF SCIENTIFIC AND TECHNICAL TERMS 2024–25 (5th ed.1994) (emphasis added). At the same time, it is common to speak of each turn as "a thread," as when referring to the number of threads per inch. *See* A. PARRISH, MECHANICAL ENGINEER'S REFERENCE BOOK § 4–2 to 4–63 (11th ed.1973). We therefore conclude that the ordinary meaning of "series of threads" to one of skill in the art, or even according to common knowledge, is continuous threading with a plurality of turns, as found on an ordinary screw or bolt.

### B. Claim Differentiation

■ The doctrine of claim differentiation also supports a construction of "series of threads" that is not limited to the preferred embodiment's highly specialized interrupted threads. This doctrine, which is ultimately based on the common sense no-

tion that different words or phrases used in separate claims are presumed to indicate that the claims have different meanings and scope, *see Comark Communications Inc. v. Harris Corp.,* 156 F.3d 1182, 1187, 48 U.S.P.Q.2d 1001, 1005 (Fed.Cir. 1998), normally means that limitations stated in dependent claims are not to be read into the independent claim from which they depend, *see Transmatic, Inc. v. Gulton Indus., Inc.,* 53 F.3d 1270, 1277, 35 U.S.P.Q.2d 1035, 1041 (Fed.Cir.1995). Here, claims 8 and 9, which were included in the original application as dependent on claim 1, recite additional structure related to the threads:

8. The implant of claim 1 in which said threads are locking threads.

9. The implant of claim 1 in which said threads are interrupted.

■ While the canon of claim differentiation is not a rigid rule, *see Comark,* 156 F.3d at 1187, 48 U.S.P.Q.2d at 1005, we conclude that, in this case, that doctrine supports the broad construction of "series of threads" that is based on the ordinary meaning of that phrase.

### C. *The Written Description*

We conclude that the '247 patent's written description does not specifically define "series of threads." SDI argues the contrary, based on language discussing the "present invention" as having highly specialized threads. Karlin argues that this language describes the inventor's preferred embodiment, and that "series of threads" should not be construed as limited to the preferred embodiment. An example of the disputed language in the written description follows:

BRIEF DESCRIPTION OF THE DRAWINGS

. . .

FIG. 4 is a perspective view of a cylindrical implant and vertebra structure.

FIG. 4A is a perspective view of one preferred embodiment of the implant.

FIG. 4B is a cross sectional view of the implant of FIG. 4A.

. . .

DETAILED DESCRIPTION OF THE DRAWINGS

. . .

Referring to FIG. 4, a cylindrical embodiment of the present invention is shown. . . .

. . . A series of external threads 53 are formed on the circumference of the cylindrical implant 50. The threads 53 are locking threads having a series of interjections, the ends of which are blunted and twisted so as to resist unscrewing.

'247 patent, col. 7, l. 36—col. 8, l. 51. Figures 4, 4A, and 4B are shown below:

FIG. 4

FIG. 4A

FIG. 4B

Although Figure 4 is expressly stated to show the "present invention," and Figures 4A and 4B refer to "one preferred embodiment," the same spinal implant is shown in each of the figures. The remainder of the written description has similarly mixed references to "present invention" and "preferred embodiment." We therefore conclude that the written description uses the terms "present invention" and "preferred embodiment" interchangeably. Given this, it is clear that only the preferred embodiment is described as having highly specialized threads. The general rule, of course, is that the claims of a patent are not limited to the preferred embodiment, unless by their own language. See, e.g., *Virginia Panel Corp. v. Mac Panel Co.*, 133 F.3d 860, 866, 45 U.S.P.Q.2d 1225, 1229 (Fed.Cir.1997) ("[I]t is well settled that device claims are not limited to devices which operate precisely as the embodiments described in detail in the patent."). There is nothing in this case that warrants departing from the general rule. Thus, the written description does not narrow the ordinary meaning of "series of threads."

### D. *The Prosecution History*

All of the claims in the original application for the '247 patent were initially re-

jected by the Patent Office examiner as being obvious in view of U.S. Patent No. 4,501,269 to Bagby (Bagby), in further view of U.S. Patent No. 4,328,593 to Sutter (Sutter). Bagby discloses a nonthreaded, hollow, cylindrical bone fusion implant with holes through the cylindrical surface, and taught that the implant was to be hammered into an undersized drilled hole in the bones to be fused. Sutter discloses a surgical implant with a plurality of interrupted and locking threads. The examiner stated that it would have been obvious that a fusion implant as taught by Bagby could be constructed with threads on the outside of the cylindrical member as taught by Sutter.

In traversing the rejection of claim 1, the applicant argued that the force fit of the Bagby device was required for the unthreaded device to work, and that there was no suggestion in Bagby "that a thread on the exterior of [the Bagby device] would be sufficient to retain the device in a cervical spine." With respect to the rejection of claims 8 and 9, which were worded identically to the issued claims, the applicant stated that those claims "recite the particular threaded structure that is employed on the present implant. The use of threads [is] not obvious for the Bagby device, and accordingly, these claims drawn dependent on claim 1 are also nonobvious and allowable."

Karlin argues that the unqualified use of "thread" in the portion of the response directed to claim 1, when viewed in context with the description of claims 8 and 9 as reciting the "particular threaded structure [of the] present implant," shows that "series of threads" in claim 1 is not highly specialized. SDI argues that, because the examiner rejected all of the claims, including claim 1, on the basis of Sutter's disclosure of the use of a plurality of interrupted and locking threads, the examiner apparently considered that claim 1's "series of threads" limitation referred to a specialized thread design. The district court con-

cluded that the prosecution history did not favor either side.

It is clear that the scope of "series of threads" in claim 1 was not limited by this office action response. In addition, the differences in the responses concerning claim 1 and claims 8 and 9 indicate that the applicant considered the claims to have a different scope. We are therefore persuaded that the prosecution history further supports the broad ordinary meaning of "series of threads" in claim 1.

### E. *Conclusion*

The foregoing discussion shows that, when viewed as a whole, the claim language, the written description, and the prosecution history support a construction of the phrase "series of threads" as meaning continuous threading with a plurality of turns, as found on an ordinary screw or bolt. We next discuss the second step of the infringement analysis.

### II. *Comparing the Construed Claims to the Accused Device*

 The second step of the infringement analysis, *i.e.,* comparing the properly construed claims to the device accused of infringing, is a question of fact. *See Cybor,* 138 F.3d at 1467, 46 U.S.P.Q.2d at 1184. In the context of a district court's grant of summary judgment of noninfringement, our review of the second step consists, first, of a de novo determination of whether any genuine issue of material fact exists, and second, if there is no genuine issue of material fact, a de novo review of whether the party was entitled to a judgment as a matter of law ("JMOL"). *See Cole,* 102 F.3d 524, 528, 41 U.S.P.Q.2d 1001, 1004. JMOL in favor of a party is properly granted in the context of literal infringement if no reasonable jury could determine that every limitation recited in the properly construed claim either is not, or is, found in the accused device (resulting in a summary judgment of literal infringement or no literal infringement, respectively). *See id.*

We reverse the district court's summary judgment and grant summary judgment in favor of Karlin because, as we discuss below, there is no genuine issue of material fact and no reasonable jury could determine that any limitation of claims 1, 3 and 4 of the '247 patent is absent from the accused device.

A representative drawing of SDI's Ray TFC spinal implant follows:

Posterior End Cap
(Inserted after bone grafts placed within cage)

Anterior End Cap
(In place prior to use)

The district court based its decision to grant a summary judgment of noninfringement by the Ray TFC implant solely on the "series of threads" limitation in claim 1. On appeal, SDI does not contest that all of the other limitations of claims 1, 3 and 4 of the '247 patent are found in the Ray TFC implant. Furthermore, SDI admits that the accused device has a continuous thread on the exterior of the cylindrical surface.

*CONCLUSION*

For the foregoing reasons, we reverse the district court's grant of summary judgment that the accused device does not infringe claims 1, 3, and 4 of the '247

patent, hold that the Ray TFC spinal implant literally infringes those claims as a matter of law, and remand the case for further proceedings consistent with this opinion.

*REVERSED AND REMANDED.*