NEUTRINO DEVELOPMENT
CORPORATION,
Plaintiff,

v.

SONOSITE, INC., Defendant.

No. CIV.A.H–01–2484.

United States District Court,
S.D. Texas,
Houston Division.

Sept. 30, 2004.

See also 2004 WL 2212049.

Richard Theodore Redano, Duane Morris LLP, Houston, TX, for Plaintiff.

Thomas W. Paterson, Susman Godfrey, Houston, TX, for Defendant/Counter Claimant.

William C. Norvell, Jr., Scott Dion Marrs, Beirne Maynard and Parsons, Houston, TX, for Plaintiff/Counter Defendant.

## MEMORANDUM AND ORDER

RAINEY, District Judge.

Pending before the Court is Plaintiff's Motion for Summary Judgment on Infringement (Dkt.# 136). The Court, after reviewing the motion, the responses of the parties and the relevant law, is of the opinion that the motion should be GRANTED.

### Factual and Procedural Background

This is an action for patent infringement brought by Neutrino Development Corporation ("Neutrino") against Sonosite, Inc. ("Sonosite"). Neutrino is the owner of United States Patent No. 6,221,021 ("the '021 patent"). Neutrino alleges that four devices manufactured and marketed by Sonosite, the Sonosite 180, SonoHeart, Sonosite 180 PLUS, and the SonoHeart PLUS, infringe on the '021 patent.

Richard T. Redano applied for a patent on the device in question on September 9, 1997. (Application Serial No. 08/926, 209).[1] The '021 patent, entitled "Method and Apparatus for Penile Hemodynamic Stimulation, Monitoring, and Drug Delivery Acceleration," resulted from that application. It describes a device for "stimulating and/or monitoring hemodynamic activity, such as blood flow, in a penis." *U.S. Patent No. 6,221,021* at col. 1, ll. 15–16.

Defendant Sonosite began as a division of ATL Ultrasound, Inc., and was spun off as a public company in April 1998. Sonosite unveiled its first public product in the realm of hand-carried ultrasound devices, the Sonosite 180, on May 17, 1999. Sonosite began selling the device in June 1999. In January 2000, Sonosite launched its second product, the SonoHeart. In April 2001, Sonosite launched a new generation of these two devices with its introduction of the SonoSite 180 PLUS and the SonoHeart PLUS.

On July 24, 2001, Neutrino filed this action, alleging that Sonosite had illegally used Redano's invention and infringed the '021 patent. Sonosite answered the complaint on August 14, 2001, asserting that the '021 patent claims are not infringed and are invalid, and counterclaimed for declaratory judgment of non-infringement and invalidity.

On February 20, 2002, after extensive briefing, the Court held a one-day *Markman* hearing on claim construction. On October 9, 2002, the Court stayed all proceedings pending the Court's *Markman* and summary judgment rulings. The Court issued its claim construction on August 21, 2003. This motion for summary judgment was filed as a result of the Court's claim construction.

### Summary Judgment Standard

Summary judgment is proper if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c); *see also Christopher Village, LP v. Retsinas*, 190 F.3d 310, 314 (5th Cir.

---

1. On May 20, 1999, Redano field a continuation in patent application, serial No. 09/315,-867 which eventually issued as the '021 patent. In May 2000, Redano amended the pending '021 Patent Application to broaden its disclosure and expand the claims. The '021 patent was issued on April 24, 2001.

1999). "For any matter on which the non-movant would bear the burden of proof at trial ..., the movant may merely point to the absence of evidence and thereby shift to the non-movant the burden of demonstrating by competent summary judgment proof that there is an issue of material fact warranting trial." *Transamerica Ins. Co. v. Avenell,* 66 F.3d 715, 718–19 (5th Cir. 1995); *see also Celotex Corp. v. Catrett,* 477 U.S. 317, 323–25, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). To prevent summary judgment, the non-movant must "respond by setting forth specific facts" that indicate a genuine issue of material fact. *Rushing v. Kansas City S. Ry. Co.,* 185 F.3d 496, 505 (5th Cir.1999).

When considering a motion for summary judgment, the Court must view the evidence in the light most favorable to the non-movant and draw all reasonable inferences in favor of the non-movant. *See Samuel v. Holmes,* 138 F.3d 173, 176 (5th Cir.1998); *Texas v. Thompson,* 70 F.3d 390, 392 (5th Cir.1995). "The court may not undertake to evaluate the credibility of the witnesses, weigh the evidence, or resolve factual disputes; so long as the evidence in the record is such that a reasonable jury drawing all inferences in favor of the nonmoving party could arrive at a verdict in that party's favor, the court must deny the motion." *Int'l Shortstop, Inc. v. Rally's, Inc.,* 939 F.2d 1257, 1263 (5th Cir.1991). However, the non-movant cannot avoid summary judgment by presenting only "conclusory allegations," or "unsubstantiated assertions," such as the bars allegations of a complaint, but must present sufficient evidence, such as sworn testimony in a deposition or affidavit, to create a genuine issue of material fact as to the claim asserted. *Little v. Liquid Air Corp.,* 37 F.3d 1069, 1075 (5th Cir.1994) (en banc).

Patent cases are amenable to summary judgment as any other case when no genuine issue of material fact exists and the movant is entitled to judgment as a matter of law. *See Warner–Jenkinson Co. v. Hilton Davis Chem. Co.,* 520 U.S. 17, 39, 117 S.Ct. 1040, 137 L.Ed.2d 146 (1997); *Johnston v. IVAC Corp.,* 885 F.2d 1574, 1576–77 (Fed.Cir.1989); *SRI Int'l v. Matsushita Elec. Corp. of Am.,* 775 F.2d 1107, 1116 (Fed.Cir.1985).

### Analysis

Plaintiff Neutrino argues that Defendant's Sonosite 180, SonoHeart, Sonosite 180 PLUS and SonoHeart PLUS read on every claim in the '021 patent, thereby establishing literal infringement. In response, Sonosite argues that the patent is not infringed under the "reverse doctrine of equivalents."

Sonosite's argument centers on the idea that the accused devices are substantially different from the devices described in the original patent application. Sonosite supports this argument by asserting that the valid scope of the invention must be determined in accordance with the principles of 35 U.S.C. § 112 before the doctrine of equivalents can be applied. As stated by the Federal Circuit in *SRI International,* and clarified by that court in *Texas Instruments, Inc. v. U.S. Int'l Trade Comm'n,* 846 F.2d 1369, 1372 (Fed.Cir.1988), before the reverse doctrine of equivalents can be applied, there must be a finding of literal infringement. Sonosite has offered no evidence to suggest that the devices in question do not infringe the patent. Rather, Sonosite argues that a fact issue exists as to whether the accused devices are so far changed from the invention at suit that the reverse doctrine of equivalents applies. *See Sonosite's Response to the Motion for Summary Judgment on Infringement,* page 14. Thus it appears to the Court that Sonosite is conceding the issue of infringement by its argument in favor of the application of the reverse doctrine of

equivalents. However, Neutrino still bears the burden of proving that the accused devices infringe on the patents.

### Infringement

■ The determination of patent infringement is a question of fact. *Karlin Tech., Inc. v. Surgical Dynamics, Inc.*, 177 F.3d 968, 974 (Fed.Cir.1999). With that in mind, the court must approach a summary judgment motion on the issue of infringement cautiously. *See SRI Int'l*, 775 F.2d at 1116. "Summary judgment is appropriate when it is apparent that only one conclusion as to infringement could be reached by a reasonable jury." *Tech-Search, L.L.C. v. Intel Corp.*, 286 F.3d 1360, 1369 (Fed.Cir.2002).

■ Infringement analysis is a two-step process. *Seal–Flex, Inc. v. Athletic Track & Court Constr.*, 172 F.3d 836, 842 (Fed. Cir.1999); *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 976 (Fed.Cir. 1995), *aff'd*, 517 U.S. 370, 116 S.Ct. 1384, 134 L.Ed.2d 577 (1996). First, the claims in question must be construed as a matter of law; and second, the properly construed claims must be compared to the accused device or process. *Markman*, 52 F.3d at 976.

In a previous order, the Court construed the claims as follows:

1. "A transducer mounting assembly moveably connected to said body such that the distance between said assembly and said body can be adjusted by a user using only one hand"-An assembly sized to contain at least one ultrasound emitter or transducer, which is connected to the portable body such that a user of the apparatus can cause a change in the distance between the transducer mount-

ing assembly and the portable body, using only one hand.

2. "A portable body sized to be hand held"-A body that is sized such that it can be held by hand and, so held, moved from one location to another.

3. "Ultrasound emitter"-At least one component, also known as a "transducer" or "emitter," and capable of emitting ultrasound energy.[2]

Therefore, the Court proceeds to the second step in the infringement analysis: comparing the claim, as construed by the Court, with the accused device. Infringement means that the accused device or process contains, either literally or under the doctrine of equivalents, "every limitation of the properly construed claim." *Seal–Flex*, 172 F.3d at 842.

■ Literal infringement exists when the accused device embodies each claim limitation precisely. *Kraft Foods, Inc. v. Int'l Trading Co.*, 203 F.3d 1362, 1370 (Fed.Cir.2000). If even one component of the claim is not found in the accused device exactly as recited in the claim, the claim does not "read on" the accused device and there can be no literal infringement. *See Pennwalt Corp. v. Durand–Wayland, Inc.*, 833 F.2d 931 (Fed.Cir. 1987). Infringement under the doctrine of equivalents requires that the accused product contain each limitation of the claim or its equivalent. *See Warner–Jenkinson*, 520 U.S. at 40, 117 S.Ct. 1040. "A claim element is equivalently present in an accused device if only 'insubstantial differences' distinguish the missing claim element from the corresponding aspects of the accused device." *Sage Prods., Inc. v. Devon Indus.*, 126 F.3d 1420, 1423 (Fed. Cir.1997). "Whether a component in the

---

2. The Court held that the following terms did not need to be interpreted because they were unambiguous: 1) "mounted in," "mounted on," "housed within," and "top surface;" 2) "portable body comprising a top surface;" 3) "connected to" and "coupled to;" 4) "generating an instruction;" and 5) "display."

accused subject matter performs substantially the same function as the claimed limitation in substantially the same way to achieve substantially the same result may be relevant to this determination." *Ethicon Endo–Surgery, Inc. v. U.S. Surgical Corp.*, 149 F.3d 1309, 1315 (Fed.Cir.1998).

Neutrino argues that the devices produced by Sonosite literally infringe on each of the patent claims. As support for this contention, Neutrino offers the testimony, in declaration form, of Richard Redano, the inventor of the '021 patent. In his declaration, Mr. Redano compares every element of the asserted claims of the '021 patent, as construed by the Court, to the Sonosite 180, Sonosite 180 PLUS, SonoHeart, and SonoHeart PLUS devices and concludes that every element is literally embodied in those devices.

Mr. Redano's declaration sets out in detail how each of the claims is infringed by the Sonosite devices. His declaration specifically references which portion of the Sonosite devices pertain to each claim. For example, with regard to the "portable body sized to be hand held" requirement, Mr. Redano, referencing pictures of the Sonosite devices produced in discovery, that "page P0216 and page P0240 the body is shown grasped in a user's hand. The body is sized such that it can be held by hand..." *See Declaration of Richard Redano*, attached as Exhibit A to Neutrino's Motion for Summary Judgment on Infringement, para. 15.

Sonosite offers no evidence to contradict the testimony of Mr. Redano. Rather, Sonosite argues that the reverse doctrine of equivalents should apply in this case.

*The Reverse Doctrine of Equivalents*

■ The reverse doctrine of equivalents states that the doctrine may be used to restrict a claim and thus defeat a patentee's action for infringement where a device is "so far changed in principle from a patented article that it performs the same

or similar function in a substantially different way, but nevertheless falls within the literal words of the claim." *Graver Tank & Mfg. v. Linde Air Prods. Co.*, 339 U.S. 605, 608–09, 70 S.Ct. 854, 94 L.Ed. 1097 (1950). The Federal Circuit, sitting *en banc,* phrased the inquiry as a single question in *SRI International v. Matsushita Electric Corporation,* stating that

> the reverse doctrine of equivalents...raises a fact question, determinable on inquiry into whether a product has been so far changed in principle that it performs the same or similar function in a substantially different way.

775 F.2d 1107, 1124 (Fed.Cir.1985) (en banc).

■ The Federal Circuit went on to say that though this inquiry differs from the inquiry under the doctrine of equivalents because literal infringement is inherently present in a reverse doctrine of equivalents case, it is nonetheless directed to a fact issue. *Id.* Therefore, when a patentee establishes literal infringement, "the accused infringer may undertake the burden of going forward to establish the fact of non-infringement under the doctrine of reverse equivalents. If the accused infringer makes a prima facie case, the patentee, who retains the burden of persuasion on infringement, must rebut that prima facie case." *Id.*

Sonosite's argument centers on the idea that the accused devices are substantially different from the devices described in the original patent application. Sonosite supports this argument by asserting that the valid scope of the invention must be determined in accordance with the principles of 35 U.S.C. § 112 before the doctrine of equivalents can be applied. Sonosite furthers its contention by asserting that the enablement and the written description requirements of § 112 do not support a finding that the claimed invention enables or

adequately describes a hand-held device. Rather, Sonosite asserts that a person skilled in the art of ultrasound would interpret the contents of the patent application, and the specifications contained therein, as describing a hand-held device that would connect to a standard ultrasound imaging system that is separate and distinct from the hand-held housing, and not an ultrasonography generator that would fit in a hand-held enclosure.

The Court, however, has already construed the claims of the patent to include a "body that is sized such that it can be held by hand..." The claim construction also indicates that the ultrasonography generator would be "mounted in said body." Additionally, the Federal Circuit made it clear in *SRI International* that the relevant test was whether the accused product was so far changed in principle that it performs the function of the *claimed invention* in a substantially different way, not whether the accused device is so far changed in principle that it performs the function of the *patent application, prior to any amendments* in a substantially different way. *See SRI Int'l,* 775 F.2d at 1124. At that point, the court in *SRI International* looked to the evidence presented regarding the ways the two products functioned to determine whether they were substantially different. *Id.* The Court has found no case where a court has discussed the enablement or written description arguments made by the Defendant when discussing the reverse doctrine of equivalents.

Sonosite's summary judgment evidence in support of its contention that the reverse doctrine of equivalents applies in this case does not address the patented device. Rather, Sonosite attempts to create a fact issue on the doctrine of equivalents by comparing the accused devices to the language of the patent application prior to its amendment and prior to the issuance of the '021 patent. The Court finds, however, that this analysis is against the weight of the authority on this subject. Therefore, the Court declines to apply the reverse doctrine of equivalents in this case. Sonosite has not met its burden of establishing that the accused devices perform in a substantially different manner from the patented claim.

### Conclusion

The Court finds that there is no evidence to support Sonosite's contention that the reverse doctrine of equivalents should be applied in this case. Therefore, because Sonosite does not raise a fact issue on the question of infringement, and the Court declines to apply the doctrine based on the facts presented by Defendant, Plaintiff's Motion for Summary Judgment on Infringement (Dkt.# 136) is GRANTED.

It is so ORDERED.