**In re KATZ INTERACTIVE CALL PROCESSING PATENT LITIGATION.**

This document relates to:

**Ronald A. Katz Technology Licensing, L.P., Plaintiff,**

v.

**Fifth Third Corporation, et al, Defendants.**

Case Nos. MDL 2:07–ML–1816–C–RGK (FFMx), CV–07–4960–RGK (FFMx).

United States District Court, C.D. California.

May 14, 2010.

Donald John Rafferty, Cohen Todd Kite & Stanford, Cincinnati, OH, Eamonn Joseph Gardner, Sarah J. Guske, Wayne Odis Stacy, Cooley Godward Kronish, Broomfield, CO, Lori R. Mason, Lowell D. Mead, Cooley LLP, Palo Alto, CA, Scott A. Cole, Cooley LLP, Reston, VA, for Plaintiff.

Ana C. Jaquez, Bruce Tittel, Gregory F. Ahrens, John Paul Davis, Thomas W. Humphrey, Wood Herron and Evans LLP, Eric Wade Richardson, Glenn Virgil Whit-

aker, Adam Corey Sherman, Vorys Sater Seymour and Pease, Cincinnati, OH, for Defendants.

**ORDER RULING ON THE PARTIES' INDIVIDUAL SUMMARY JUDGMENT MOTIONS**

R. GARY KLAUSNER, District Judge.

## TABLE OF CONTENTS

I. INTRODUCTION ..............................................1128

II. JUDICIAL STANDARD ........................................1128

III. FIFTH THIRD'S DEFENSES ..................................1129
 A. Non–Infringement ......................................1129
 1. Legal Standard—Non–Infringement ..................1129
 2. Receiving DNIS ...................................1130
 3. Using DNIS .......................................1130
 4. Using DNIS to Select a Format ....................1131
 5. Multiple Formats .................................1131
 6. Limit a Caller's Use or Restrict Access ...........1132
 a. Claims 69 and 86 of the '707 Patent.............1132
 i. Stop Payment ............................1133
 ii. Transfer Funds..........................1133
 iii. Jeanie .................................1134
 b. Claims 46 and 59 of the '309 Patent and Claim 24 of the '707 Patent..............................................1134
 i. Stop Payment ............................1135
 ii. Card Activation.........................1135
 iii. Limiting Stored Data...................1135
 7. Customer Number and Personal Identification ......1136
 a. Last Four Digits of Social Security Number .......1136
 b. PIN Number ..................................1136
 8. Imposed Condition ................................1137
 B. Induced Infringement or Contributory Infringement ......1138
 1. Inducement ......................................1138
 2. Contributory Infringement........................1139
 C. Obviousness ...........................................1139
 1. Legal Standard—Obviousness ......................1139
 2. Priority .........................................1140
 3. Prior Art ........................................1140
 4. Motivation to Combine ............................1141
 5. Means Plus Function Limitations ..................1142
 D. Katz Failed to Comply with 35 U.S.C. § 287 ............1142
 E. Laches.................................................1143
 F. No Willful Infringement................................1143

IV. KATZ'S CROSS MOTION FOR SUMMARY JUDGMENT ...............1144
 A. Infringement ..........................................1144
 B. Laches.................................................1145
 1. Legal Standard—Laches ...........................1145
 2. Unreasonable Delay...............................1145
 3. Prejudice ........................................1146
 a. Evidentiary Prejudice .........................1146
 b. Economic Prejudice ...........................1147
 C. Equitable Estoppel ....................................1148
 D. Prosecution Laches ....................................1148
 1. Legal Standard—Prosecution Laches ...............1149
 2. Unreasonable Delay...............................1149
 3. Intervening Adverse Rights .......................1150

V. SUMMARY ....................................................................1150
 A. Fifth Third's Motion for Summary Judgment ............................1150
 1. Non–Infringement ...............................................1150
 2. Induced and Contributory Infringement ..........................1151
 3. Obviousness....................................................1151
 4. 35 U.S.C. § 287 ...............................................1151
 5. Laches ........................................................1152
 6. Willfulness....................................................1152
 B. Katz's Cross Motion for Summary Judgment ............................1152
 1. Infringement...................................................1152
 2. Laches ........................................................1152
 3. Equitable Estoppel ............................................1152
 4. Prosecution History Laches ....................................1152

## I. INTRODUCTION

In approximately fifty different lawsuits, plaintiff Ronald A. Katz Technology Licensing, L.P. ("Katz") has alleged that various defendants infringe claims from its family of related interactive call processing patents. The Judicial Panel on Multidistrict Litigation consolidated these cases for pretrial proceedings and transferred the consolidated case to this Court (07–MDL1816). This Court grouped the different cases based roughly on the date they were transferred. The current case is part of the group C cases.

In managing the group C cases, this Court ordered Katz to eventually limit the number of claims it was asserting against each defendant group to sixteen. This Court has already ruled on various joint summary judgment motions filed by the group C defendants and found that a number of the asserted claims were invalid as obvious under 35 U.S.C. § 103 or invalid for lack of written description and/or indefinite under 35 U.S.C. § 112.

The sixteen claims Katz asserts against defendants Fifth Third Bancorp, Fifth Third, and Fifth Third (Central Ohio) (collectively, "Fifth Third") are: claims 57, 62 and 63 of U.S. Patent No. 5,974,120 ("the '120 patent"); claims 1 and 3 of U.S. Patent No. 5,351,285; claims 46 and 51 of U.S. Patent 5,255,309 ("the '309 patent"); claims 24, 69, and 86 of U.S. Patent No. 5,561,707 ("the '707 patent"); and claims 31, 32, 39, 43, 44 and 50 of U.S. Patent No. 5,684,863 ("the '863 patent"). Both parties have moved for summary judgment.

Fifth Third's motion for summary judgment raises a number of different issues. Fifth Third's motion also asks for relief based on: 1) non-infringement, 2) obviousness, 3) the failure to mark under 35 U.S.C. § 287, 4) laches, and 5) willful infringement. Katz moves for summary judgment on four sets of issues. First, Katz asks for a finding that Fifth Third infringes claims 1 and 3 of the '285 patent and claims 31, 32, 39, 43, 44 and 50 of the '863 patent. The motion also seeks to dismiss Fifth Third's affirmative defenses of equitable estoppel, laches and prosecution laches.

## II. JUDICIAL STANDARD

Summary judgment should be granted "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c); *see Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247–248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *see also Karlin Tech., Inc. v. Surgical Dynamics, Inc.,* 177 F.3d 968, 970 (Fed.Cir.1999). A dispute about a material fact is "genuine" only if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* A party opposing a properly supported motion for summary

judgment " 'may not rest upon the mere allegations or denials of his pleading, but ... must set forth specific facts showing that there is a genuine issue for trial.' " *Id.* (quoting *First National Bank of Arizona v. Cities Service Co.,* 391 U.S. 253, 88 S.Ct. 1575, 20 L.Ed.2d 569 (1968)). "If the evidence [opposing summary judgment] is merely colorable, or is not significantly probative, summary judgment may be granted." *Id.* at 249–250, 106 S.Ct. 2505 (citations omitted).

Even where the movant does not seek judgment as to the whole action, "the court should, to the extent practicable, determine what material facts are not genuinely at issue." Fed.R.Civ.P. 56(d)(1). "It should then issue an order specifying what facts—including items of damages or other relief—are not genuinely at issue." *Id.* Thus, "judgment may be rendered on liability alone...." Fed.R.Civ.P. 56(d)(2).

## III. FIFTH THIRD'S DEFENSES

### A. Non–Infringement

Fifth Third's non-infringement arguments can be grouped into roughly seven categories. First, Fifth Third argues that its accused systems and services to not receive DNIS or the equivalent of data identifying the number called. Second, Fifth Third argues that neither DNIS nor VDN was used "to identify one from a plurality of numbers dialed by the callers." Third, Fifth Third argues that it did not use DNIS to select a format. Fourth, Fifth Third argues that its accused services did not use multiple formats. Fifth, Fifth Third argues that the accused structures do not perform the type of qualification required by the claims. Sixth, Fifth Third argues that the accused system does not use the two required forms of identification necessary to qualify callers. Seventh, Fifth Third argues that its system do not satisfy the "imposed condition" limita-

tion because its systems never used equipment designation information.

This Court's January 29, 2010 Order Granting in Part and Denying in Part Defendants' Joint Motion for Summary Judgment of Invalidity Under Sections 102 and 103 ("Group C § 102/103 Order") ruled that a number of the claims Katz is asserting against Fifth Third are invalid. Specifically, the Court found that claims 62 and 63 of the '120 patent and claim 69 of the '707 patent were invalid in view of the prior art defendants identified.

### 1. Legal Standard—Non–Infringement

Under the Patent Act, 35 U.S.C. § 271, liability for patent infringement may be imposed on any person who without permission of the patentee, "makes, uses, offers to sell, or sells any patented invention [ ] within the United States or imports into the United States any patented invention during the term of the patent therefore." The rights granted to the patentee are defined by the patent's claims. *Markman v. Westview Instruments, Inc.,* 517 U.S. 370, 373, 116 S.Ct. 1384, 134 L.Ed.2d 577 (1996).

In determining whether an allegedly infringing device falls within the scope of the claims, a two-step process is used: first, the court must determine as a matter of law the meaning of the particular claim or claims at issue; and second, it must consider whether the accused product infringes one or more of the properly construed claims. *Id.* at 384, 116 S.Ct. 1384; *Allen Eng'g Corp. v. Bartell Indus., Inc.,* 299 F.3d 1336, 1344 (Fed.Cir.2002). The second inquiry is a question of fact, although summary judgment of infringement or non-infringement may nonetheless be appropriate when no genuine dispute of material fact exists. *Irdeto Access, Inc. v. Echostar Satellite Corp.,* 383 F.3d 1295,

1299 (Fed.Cir.2004) (quoting *Bai v. L & L Wings, Inc.*, 160 F.3d 1350, 1353 (Fed.Cir. 1998)).

■■ The patentee bears the burden of proving infringement by a preponderance of the evidence. *Laitram Corp. v. Rexnord, Inc.*, 939 F.2d 1533, 1535 (Fed.Cir. 1991). This burden can be met by showing that the patent is infringed either literally or under the doctrine of equivalents. *See Linear Tech. Corp. v. Impala Linear Corp.*, 379 F.3d 1311, 1318 (Fed.Cir.2004). To support a finding of literal infringement, the patentee must establish that "every limitation recited in the claim appears in the accused product, i.e., the properly construed claim reads on the accused product exactly." *Jeneric/Pentron, Inc. v. Dillon Co.*, 205 F.3d 1377, 1382 (Fed.Cir. 2000) (citing *Amhil Enters. Ltd. v. Wawa, Inc.*, 81 F.3d 1554, 1562 (Fed.Cir.1996)).

## 2. Receiving DNIS

■ Claims 57, 62 and 63 of the '120 patent, claims 1 and 3 of the '285 patent, and claims 31, 32, 39, 43, 44 and 50 of the '863 patent all require receiving DNIS (dialed number identification signals). Fifth Third says that its systems received vector directory numbers ("VDN"), not DNIS. A VDN is a shorter four or five digit number. (Sieve Decl. ¶ 3.) A VDN is an internal number that directs the call to a specific vector. (Kelly Decl. ¶ 80.) A vector is a set of instructions that tells the PBX what to do with the call. (Kelly Decl. ¶ 81.) A number of factors including the DNIS (called number), the time of day, and number of calls sent to a particular location are used to select a VDN. (*See* Sieve Decl. ¶ 5; Kelly Decl. ¶¶ 82–83) Although there is a relationship between the DNIS and VDN, there is not a one to one relationship. (*See* Zatkovich Report at p. 55 attached as G1.) Katz even admits that in some cases the same dialed telephone numbers can correlate to different VDNs. (*See* Katz's Cor-

rected Statement of Genuine Issues at ¶¶ 58–59.) Therefore, Fifth Third says that it does not infringe those claims that require receiving DNIS.

Katz has two responses. First, Katz says that Fifth Third's systems received a DNIS number at its PBX/ACD systems and then maps that number into a VDN carrier. (Kelly Decl. ¶ 80.) Second, Katz argues that a VDN is a DNIS as defined by the Court.

With respect to the first argument, the declaration of John Sieve suggests that Fifth Third's carriers receive the DNIS and transforms it to a VDN, which in turn, is provided to Fifth Third. *(See* Sieve Decl. ¶¶ 2–5) However, Katz's expert says that the carriers actually provide Fifth Third with DNIS and that Fifth Third's PBXs use the DNIS to arrive at a VDN. (Kelly Decl. ¶ 80; Sieve Dep. 71:7–13 attached as Ex. 44.) This conflicting evidence clearly raises a factual issue for the jury. Accordingly, this Court DENIES Fifth Third's motion for summary judgment as it relates to whether the accused systems received DNIS.

## 3. Using DNIS

■ Claims 57, 62 and 63 of the '120 and claims 31, 32, 39, 43, 44 and 50 of the '863 patent require using DNIS to identify the dialed number. Specifically, the claims from the '120 patent require "utilizing the dialed-number identification signals to identify one from a plurality of numbers dialed by the callers," and the claims from the '863 patent require "means to receive called number identification signals (DNIS) automatically provided by said communication facility to identify a select one of a plurality of different called numbers associated with a select format...." Again, Fifth Third argues that it uses a VDN, not DNIS. Moreover, Fifth Third argues that even if a VDN is considered

DNIS, it does not use the VDN to identify the dialed number. Therefore, Fifth Third asks for summary judgment of non-infringement.

In response, Katz appears to have two theories. First, Katz says that Fifth Third received DNIS from its carriers at its PBX. The PBX then used the DNIS and other factors to eventually select the instructions for processing the call. Although the VDN played a more direct role in the accused process, that does not change the fact that the DNIS was still used to identify the dialed number and to help select a format. (*See* Kelly ¶¶ Decl. 80–83.) This certainly creates a triable issue for the jury. Accordingly, this Court DENIES Fifth Third's motion for summary judgment as it relates to whether the accused systems use DNIS to identify the called number and select a format.

Katz also argues that VDN qualifies as DNIS under this Court's definition. This Court previously found that "DNIS [referring to signals]" means "signals that identify the number called," and (2) "DNIS [referring to data]" means "data that identify the number called." (February 21, 2008 Claim Construction Order at p. 8.) The VDN is a four or five digit number that does not directly correspond to a called number. In fact, Katz admits that the same dialed number can result in different VDNs (Katz's Statement of Genuine Issues at ¶ 59.) Even though there is obviously a relationship between a called number and a VDN, Katz has provided no evidence that Fifth Third ever used or could use the 4 or 5 digit VDN number to identify the called number. Therefore, this Court finds that VDN number is not a DNIS number. Accordingly, to the extent that Katz relies on the VDN itself to satisfy the DNIS limitation, this Court rejects that argument.

Based on the forgoing, this Court finds that Katz has presented sufficient evidence to create a triable issue of fact with respect to whether Fifth Third's systems used DNIS. Accordingly, this Court DENIES Fifth Third's motion for summary judgment of non-infringement on this issue.

### 4. Using DNIS to Select a Format

Claims 1 and 3 of the '285 patent and claims 31, 32, 39, 43, 44 and 50 of the '863 patent require using DNIS to select a format. As discussed in the preceding section, this Court found that a VDN is not a DNIS. Nevertheless, Katz has presented evidence that Fifth Third's systems received a DNIS at its PBX and that these signals were used to help select a format. Accordingly, this Court DENIES Fifth Third's motion for summary judgment of non-infringement on this issue.

### 5. Multiple Formats

■ Claims 1 and 3 of the '285 patent and claims 31, 32, 39, 43, 44 and 50 of the '863 patent require multiple formats. Fifth Third argues that the accused call flows on its Conversant system correspond to a single format. As a result, Fifth Third asks for summary judgment of non-infringement.

This Court previously defined "format" as follows:

Format refers to a call processing flow implemented by at least one computer program that sets forth the content and sequence of steps to gather information from and convey information to callers through pre-recorded prompts and messages. Selection of, or branching to, a module or subroutine within a computer program does not constitute selection of a separate format. Selection of (or branching to), a second computer program by a first computer program, that together implement a call process flow

application also does not constitute selection of a separate format. (February 21, 2008 Claim Construction Order at p. 16.)

Katz says that three different formats ran on the Conversant system: 1) the merchant check verification format, 2) the customer service format, and 3) the loans format. The check verification format allowed callers to determine whether they have sufficient funds in an account to cover a particular check. The customer service format offered callers the option to make inquiries into: 1) checking, savings, CD or IRA accounts, 2) loans, leases or credit cards, 3) transferring funds, 4) lost or stolen cards, 5) PIN changes, 6) new accounts, or 7) proceeding in Spanish. The loans format provided callers with options relating to 1) mortgage loans, 2) home equity lines, or loans, 3) automobile loans, or 4) other inquiries.

Fifth Third argues that the call flows Katz identifies do not correspond to separate formats. In support of that position, Fifth Third says that the different call flows were all operated on the Avaya Conversant IVR platform which ran a single application. Moreover, Fifth Thirds says that the different call flows were not designed as separate programs. Finally, Fifth Third says that each call flow was simply a different entry point within a single application. Fifth Third's opening summary judgment papers provide very limited discussion of this last issue. However, its reply brief explains that there is "significant intersection" between the different call flows. (Zatkovich Reply Decl. ¶¶ 13–18.) In other words, callers from one call flow can branch to another call flow. *Id.*

In response, Katz says that Fifth Third's Conversant system consisted of multiple applications with separate call processing flows. In support of its argument, Katz points out that in the Avaya Conversant platform, customers could create different call flows. Although the call processing flows were all executed by the Conversant IVR system, Katz says that each call flow represents a different application.

Katz also argues that Fifth Third incorrectly characterizes the different call flows as different branches of a single application. Katz says that when a new telephone call was received the correct application was selected and dispatched using the "irExec" library routine. According to Katz's expert, Dr. Kelly, the call flow operated as a new application in the system. (Kelly Decl. ¶ 67.)

After reviewing the evidence, this Court finds that Fifth Third has failed to prove that the accused call flows correspond to a single format. The fact that the different accused call flows run on a single platform is insufficient. A jury could conclude that the call flows themselves were separate and distinct. Fifth Third's discussion of the intersection between the call flows is relevant. But it fails to explain how significant the intersection was between the different call flows. Indeed, Fifth Third never suggests that every accused call flow could be reached from every other call flow. Finally, Dr. Kelly's testimony also suggests that there are different applications. The Court recognizes that Zatkovich's declaration challenges Dr. Kelly's characterizations. But that simply shows that there is a triable issue of fact. Accordingly, this Court DENIES Fifth Third's motion for summary judgment of non-infringement as it relates to the multiple formats issue.

### 6. Limit a Caller's Use or Restrict Access

#### a. Claims 69 and 86 of the '707 Patent

Claim 69 of the '707 patent requires the step of:

*... qualifying said individual callers* by testing to determine if said individual callers are entitled to access said operations of the interface *based on said limits on use specified by said participation numbers* for said individual callers and accordingly providing approval signals for qualified individual callers
...

(emphasis added.)

Claim 86 is dependent on claim 69. Therefore, claim 86 also requires the recited participation numbers. Katz says that both the Conversant and the DVRS systems satisfy this limitation because the systems' qualified callers:

> based on the limits on use (e.g., stop payment status of a check, number of transfers already performed and the funds available for transfer) specified by an account number or card number for the individual....

(Expert Report of Dr. John P. Kelly Re: Fifth Third Defendants at p. 7 of Ex. FTB–4) This Court examines separately each of the infringement examples Katz identifies.

### i. Stop Payment

 The stop payment application ran on the Conversant system. Dr. Kelly points out that there was a limit of one stop payment request per check. (Kelly Decl. ¶ 90.) Katz says that the check numbers and limit of one stop payment correspond to the required participation numbers and limit. (Katz's Corrected Statement of Genuine Issues at ¶¶ 103, 107; Kelly Report at p. 10 of Ex. FTB–4.) Dr. Kelly argues that callers attempting to stop payments were qualified by testing if the individuals were entitled to stop payments. (Kelly Decl. ¶ 90.)

In response, Fifth Third's expert, Mr. Zatkovich, advances two arguments. First, Mr. Zatkovich says that the check number did not specify a limit on the number of times a caller can request the stop check service. (Zatkovich Decl. ¶ 61.) Claim 69 of the '707 patent requires that the "limits on use" are "specified by said participation number." Katz merely shows that the check number and the limit were used to qualify a caller's access to some of the system's functions. The limit of stop check orders was one, regardless of the check number. Based on the foregoing, this Court finds that the check numbers do not specify a limit on use. Accordingly, this Court finds that the stop payment application does not infringe claims 69 and 86 of the '707 patent and GRANTS Fifth Third's summary judgment motion of non-infringement.

So that the parties may address all the issues together on any future appeal, this Court also addresses Fifth Third's second argument. Mr. Zatkovich says that there was no limit on a caller's ability to access the stop check feature. If the caller has already stopped the check, an error code was returned. (*Id.* at ¶ 66.) If the check has already been stopped, the caller was informed that the stop payment request could not be processed again. Katz characterizes these facts differently. Specifically, Katz says that "a caller cannot successfully access the portion of the system that will process a stop-payment request once the check number has been used to cancel a check." (Katz's Corrected Statement of Genuine Issues at ¶ 109.) This Court finds that Katz has raised a triable issue of fact for the jury. Accordingly, this Court DENIES Fifth Third's motion for summary judgment of non-infringement to the extent it argues that the stop payment application does not contain a limit on use.

### ii. Transfer Funds

 The transfer funds application also ran on the Conversant system. There was a maximum transfer limit determined

by the account balance. (Kelly Decl. ¶ 91.) Thus, Katz concludes that the Jeanie card and the account balance were the participation number and limit respectively. *Id.* Using that information, the system qualified a caller to be able to transfer funds. If the caller was not qualified, the caller was prompted to reenter the transfer amount. Otherwise, the system processed the transaction and provided approval signals. *Id.* Dr. Kelly also points out that due to federal requirements, callers could only transfer funds from a savings account a limited number of times. (Kelly Decl. ¶ 92.) Dr. Kelly says that this also served as a limit used to qualify access to transferring funds. *Id.*

In response, Fifth Third says that an account number cannot serve as a participation number because the account balance could be refreshed on a regular basis with deposits and credits. (Zatkovich Report at p. 65 attached as Ex. G1.) Previously, this Court had defined "consumable participation key" to mean "a number or word that allows a caller access to a service or part of a service a predefined limited number of times which cannot be refreshed or recharged." (February 21, 2008 Claim Construction Order at p. 19.) Katz notes that claims 69 and 86 of the '707 patent merely require "participation numbers," and say nothing about the numbers being consumable. As a result, Katz concludes that there is no requirement that the numbers cannot be refreshed or recharged. Katz's argument makes some sense and Fifth Third has failed to rebut this 11 claim interpretation. Accordingly, this Court finds that Fifth Third has failed to carry its burden of proof with respect to the proper interpretation of participation number.

As to the limit on the number of transfers from a savings account, Fifth Third argues that this limit has nothing to do with the participation key. (Zatkovich Report at p. 65 attached as Ex. G1.) Since the claims require the participation key to specify the limit, Fifth Third concludes that there is no infringement. *Id.* Katz points out that callers are not entitled to transfer funds without entering a participation key. However, that does not show that the accused participation key specifies the limit on use. Claim 69 of the '707 patent requires that the "limits on use" are "specified by said participation number." All Katz has shown is that a caller is qualified based on a participation number and a limit. Katz has not provided evidence that the participation number somehow specified the limit.

Thus, this Court finds that the Jeanie card number is not a participation number that specifies a limit on use. Accordingly, this Court finds that the limit on transferring funds does not infringe claims 69 and 86 of the '707 patent and this Court GRANTS Fifth Third's summary judgment motion of non-infringement. Based on the earlier discussion, this Court DENIES Fifth Third's summary judgment motion of non-infringement to the extent it relies on the fact that account balances are refreshed.

### iii. Jeanie

The Jeanie application also ran on the DVRS system. In the case of the Jeanie application, the issues are the same as they were for the transfer funds application of the Conversant system discussed above. (*See* Kelly Decl. ¶ 93.) Accordingly, this Court GRANTS Fifth Third's summary judgment motion of non-infringement for the same reasons discussed in the preceding section.

### b. Claims 46 and 51 of the '309 Patent and Claim 24 of the '707 Patent

Claims 46 and 51 of the '309 patent require:

... a *consumable participation key* for *restricting the extent of access* to said system to limit data stored from said respective one of said individual callers on the basis of entitlement. . . .

Similarly, claim 24 of the '707 patent requires:

... a *consumable participation key* for *restricting the extent of access* to at least a portion of said system by said one of said individual callers on the basis of entitlement. . . .

As stated above, a consumable participation key is a number or word that allows a caller access to a service or part of a service a predefined limited number of times, which cannot be refreshed or recharged. Katz says that the stop payment application in the Conversant system and the credit and debit card activation application in the DVRS system had the required consumable participation key.

### i. Stop Payment

Katz says that the same stop payment application described above had a consumable participation key. Katz argues that the check number was consumable because once a stop was performed on the check, the system restricted additional access. (Kelly Report at pp. 6, 12–13 of Ex. FTB–3 and p. 6 of Ex. FTB–4.)

The issues here only partially overlap with the issues raised with respect to claims 69 and 86 of the '707 patent. Unlike those earlier claims, claims 46 and 51 of the '309 patent and claim 24 of the '707 patent do not require that the participation key "specify" the extent of access. Therefore, the claims do not require the same relationship between the participation key and limit as the earlier claims. Otherwise, the issues track the issues raised earlier. Accordingly, this Court DENIES Fifth Third's motion for summary judgment of non-infringement because a reasonable jury may find that the stop payment application restricts the extent of access a call-er may have to parts of the stop payment application.

### ii. Card Activation

The card activation application allowed a caller to activate a credit or debit card once. According to Katz, the card number was the consumable participation key. (Kelly Decl. ¶ 101.)

Fifth Third argues that there is no restriction on access because the caller can request activation of a card an unlimited number of times. (Zatkovich Report at p. 65.) The facts track those found in the stop payment application. Katz argues that a caller cannot successfully access the portion of the system that actually activates a card more than once. Again, this Court finds that a reasonable jury could conclude that a caller could not access parts of the card activation application more than once. Thus, this Court DENIES Fifth Third's summary judgment motion of non-infringement to the extent that it argues that the card activation application does not restrict access.

### iii. Limiting Stored Data

■ Claims 46 and 51 also require a consumable participation key that limits stored data. Katz identifies ways that the system limited stored data for both the stop payment application and the card activation application. First, Katz says that the system "restricted the extent of access to the system to limit data stored from the caller (e.g., data related to the stop payment request)." (Kelly Report at pp. 6 of Ex. FTB–3.) Second, Katz says that the system will not store a block removal when a card is activated. (Kelly Decl. ¶ 103.)

Fifth Third argues that the accused systems stored data whether or not a transaction was successful. Therefore, Fifth Third concludes that the accused systems did not limit stored data. Katz's argument relies on the fact that different data is

stored for a successful transaction. Thus, Katz concludes that the systems prevented or limited data associated with a successful transaction from being stored. This Court rejects Katz's interpretation. A reasonable jury could not conclude that a system is limiting stored data whenever different data may be stored based on how the application proceeds.

Thus, this Court finds that the stop payment and card activation applications did not use a consumable participation key to limit stored data. Accordingly, this Court GRANTS Fifth Third's summary judgment motion of non-infringement as to claims 46 and 51 of the '309 patent, as they relate to the stop payment and card activation applications.

### 7. Customer Number and Personal Identification

Claims 31, 32, 39, 43, 44 and 50 of the '863 patent all require two forms of identification to qualify a caller: 1) customer number data, and 2) personal identification data. Katz has accused two combinations of satisfying these limitations. First, Katz says that the account number and the last four digits of the caller's social security number satisfy these limitations. Second, Katz says that the caller's social security number and PIN number satisfy these limitations.[1]

The Court previously defined "personal identification data" as:

[D]ata that is personal or specific to a caller that permanently identifies the caller to the world at large and is distinct from caller customer number data, a password, and PIN numbers. Examples of personal identification data may

include a name, address, telephone number or initials.

(February 21, 2008 Claim Construction Order at p. 11.) The Court also defined "customer number data" as:

"[A] number assigned to a customer by a vendor or merchant or recognized by a vendor or merchant for the purpose of identification of the customer."

(*Id.* at p. 27.)

#### a. Last Four Digits of Social Security Number

■ Fifth Third's motion for summary judgment argues that the last four digits of a social security number cannot satisfy the personal identification data limitation because those four digits did not identify the caller to the world at large. Katz does not rebut this argument. In fact, its expert, Dr. Kelly, does not provide any testimony on this subject. Instead, Katz merely suggests that the last four digits of a social security number provide better identification than a caller's initials. However, that argument does not demonstrate that the four digits satisfy the definition. The Court notes Katz's attorney uses the phrase "permanently identifies the caller to the world at large" during the reexamination of one of its patents. (*Id.* at p. 10.) It cannot walk away from this requirement now. Accordingly, this Court finds that the last four digits of a social security number cannot be "personal identification data."

#### b. PIN Number

■ Fifth Third's motion for summary judgment also argues that a PIN cannot be customer number data because it is not

---

1. Fifth Third's motion identifies a third set of data that supposedly satisfies these limitations, a Jeanie card number or social security number and PIN. However, Katz says that it never argued that a Jeanie card was personal identification data. (Katz's Corrected Statement of Genuine Issues at ¶ 156.) Therefore, this Court does not address this third accused combination.

recognized or assigned by a vendor as uniquely identifying a customer. (Zatkovich Decl. ¶ 109.) In response, Katz argues that the PIN number satisfies the definition of a customer number because the accused system initially qualified a customer by using the caller's social security number and the PIN to ensure that the caller is the customer, and not merely a caller who knows the caller's social security number. (Kelly Decl. ¶ 105.) However, both parties' declarations are overly conclusory. Neither party has submitted evidence indicating how the PIN number was assigned. Neither party has explained whether the system used a PIN number to identify a caller, as opposed to merely verifying the caller's identity. Without this evidence, this Court cannot make any definitive ruling. Accordingly, this Court finds that Fifth Third has failed to satisfy its burden of proof and there remains a triable issue of fact as to whether a PIN number can be customer number data.

Based on the foregoing, this Court finds that the combination of an account number and the last four digits of the caller's social security number do not infringe the claims at issue and this Court GRANTS Fifth Third's summary judgment motion of non-infringement with respect to this issue. This Court finds that Fifth Third has failed to meet its burden of proof of showing no triable issue of fact with respect to the combination of a social security number and PIN number. Therefore, this Court DENIES Fifth Third's summary judgment motion of non-infringement with respect to this issue.

### 8. Imposed Condition

 Claim 1 of the '285 patent requires a:

> ... selection means coupled to said call data means for selecting one of said formats under control of said call data including DNIS to thereby *further specify imposed conditions* that must exist for a connection of a call either to said multiple port, multiple format processor or one of said live operator stations....

Fifth Third says that the imposed conditions must be related to an "equipment type designation." Since Fifth Third's systems never used equipment type designation information, Fifth Third contends that it does not infringe claim 1 or dependent claim 3. Katz disagrees with Fifth Third's claim interpretation.

To arrive at its interpretation, Fifth Third relies on three arguments. First, Fifth Third says that the doctrine of claim differentiation requires that the "imposed conditions" described in claim 1 must be different than the "test conditions" found in dependent claims 2–5. Second, without any explanation, Fifth Third says that the "imposed conditions" refer to conditions related to "call data signals." (*See* Zatkovich Decl. ¶ 120; Fifth Third's Statement of Undisputed Facts at ¶ 175; Fory's Decl. ¶ 24.) Call data signals refer to three specific signals—the called number, calling number, and a calling equipment designation (*see* February 21, 2008 Claim Construction Order at p. 48.). As a result, Fifth Third concludes that the "imposed conditions" must relate to call data signals that are not also related to "test conditions." Finally, Fifth Third argues that the called number and calling number signals are the test conditions in some instances. (Zatkovich Decl. ¶ 126.) As a result, Fifth Third concludes that the term "imposed conditions" must be related to an equipment type designation.

Katz disagrees with Fifth Third's interpretation. Although Katz agrees that the term "imposed conditions" and "test conditions" have different meanings, Katz argues that the test conditions are merely a subset of imposed conditions. Thus, Katz argues that claims 1 and 2 of the '285 patent first impose conditions and then

test at least some of those conditions. Next, Katz points out that there is no evidence that an imposed condition can relate only to call data signals. Indeed, Dr. Brody testified that an imposed condition may relate to whether a call is allowed to be connected during a particular time period. (Brody Dep. at p. 164 attached as Ex. 52 to Goldstein Decl.)

This Court agrees with Katz on both counts. First, this Court does not interpret the imposed conditions and test conditions to be mutually exclusive. In an earlier Group B case, this Court previously found that the test disclosed in Figure 2 at blocks 44, 46, 50 and 52 also relate to "imposed conditions." (August 13, 2009 Order Ruling on Individual Summary Judgment Motions at pp. 44–45, 07–CV–2134.) Second, this Court sees no reason to require that the imposed conditions be related to three call data signals identified by Fifth Third. Accordingly, this Court finds that Fifth Third has failed to prove that its systems did not satisfy the "imposed condition" limitation, and this Court DENIES Fifth Third's summary judgment motion as it relates to this issue.

## B. Induced Infringement or Contributory Infringement

Pursuant to 35 U.S.C. § 271(b) and (c), Katz has brought claims for inducement and contributory infringement. Fifth Third's motion for summary judgment argues that the facts Katz identified are insufficient as a matter of law.

### 1. Inducement

To show inducement, Katz must show actual direct infringement by some party other than Fifth Third. *ACCO Brands, Inc. v. ABA Locks Mfr. Co.*, 501 F.3d 1307, 1313 (Fed.Cir.2007). Then, Katz must show that Fifth Third actively and knowingly aided and abetted that infringement. *DSU Med. Corp. v. JMS Co., Ltd.*, 471 F.3d 1293, 1305 (Fed.Cir.2006). Fifth

Third argues that Katz's allegations fail on both those counts.

First, Fifth Third says that Katz has failed to present any evidence that its customers directly infringed the asserted claims. As an initial matter, Katz argues that Fifth Third directly infringed each of the selected claims. However, Katz goes on to say that "to the extent that Fifth Third argues or a court finds that the direct infringers are callers to Fifth Third's systems, there is at least a triable issue that Fifth Third is liable for inducement and contributory infringement." (Katz's Opp'n at 19.) However, Katz never explains why this contingency might occur. Katz has the burden of showing that under some theory, some third party directly infringes the asserted claims. Katz does say that "[t]o ensure that its customers used the infringing systems, Fifth Third published or otherwise distributed telephone numbers for its customers to use." *Id.* But that statement does not show that use of the accused systems satisfies the limitations of each claim. Accordingly, this Court finds that Katz has failed to present any substantial evidence of third party infringement.

Katz also argues that the Court should not grant summary judgment on inducement because Katz has been limited to asserting sixteen claims against each defendant group in this case. Katz argues that to grant summary judgment without letting Katz assert additional claims would violate due process. This Court rejects Katz's due process arguments. The Court imposed a sixteen claim limit, but explicitly recognized that Katz might need to exceed that limit. As a result, the Court invited Katz to move for relief from the sixteen claim limit to the extent it could identify non-duplicative claims. Claims that rely on different theories of liability clearly fall within this category. However, Katz did

not move for permission to assert more claims against these services. As a result, Katz cannot complain about a lack of due process now. Accordingly, this Court GRANTS Fifth Third's motion for summary judgment with respect to inducement.

### 2. Contributory Infringement

■■■■ Contributory infringement also requires an underlying act of direct infringement. *See Tech. Corp. v. Impala Linear Corp.*, 379 F.3d 1311, 1326 (Fed. Cir.2004). Again, Katz does not explain how any third parties directly infringe the asserted claims. Moreover, Katz never even identifies any Fifth Third activity that constitutes contributory infringement. Thus, Katz has not offered sufficient evidence to create a triable issue of fact.

Katz also suggests that the contributory infringement may apply to the "unselected" claims. Katz says that to grant summary judgment of no contributory infringement would violate due process. For the reasons stated in the preceding section, this Court rejects Katz's due process argument. Since Katz has failed to identify any facts that suggest Fifth Third should be liable for contributory infringement, this Court GRANTS Fifth Third's motion for summary judgment on this issue.

### C. Obviousness

Fifth Third argues that claim 24 of the '707 patent is invalid as obvious over the combination of U.S. Patent No. 4,071,698 entitled "Telephone System for Audio Demonstration and Marketing of Goods and Services" ("Barger") and "Phone Offers Action at Push of Button" by Eileen Norris, dated February 6, 1986 ("Norris").

Claim 24 recites:

24. An analysis control system for use with a communication facility including remote terminals for individual callers, wherein each of said remote terminals may comprise a conventional telephone instrument including voice communication means, and digital input means in the form of an array of alphabetic numeric buttons for providing data, said analysis control system comprising:

an interface structure coupled to said communication facility to interface said remote terminals for voice and digital communication, and including means to provide caller data signals representative of data relating to said individual callers developed by said remote terminals;

voice generator structure coupled through said interface structure for actuating said remote terminals as to provide voice operating instructions to said individual callers;

record structure, including memory and control means, connected to receive said caller data signals from said interface structure for accessing a file and storing digital caller data relating to said individual callers provided from said digital input means through said interface structure; and

qualification structure for operation at a predetermined time for testing caller data signals provided by at least one of said individual callers to specify a consumable participation key for restricting the extent of access to at least a portion of said system by said one of said individual callers on the basis of entitlement.

### 1. Legal Standard—Obviousness

■■■■ If the claimed invention is not disclosed in a single prior art reference, a patent may be invalid as obvious under § 103. In *Graham v. John Deere*, 383 U.S. 1, 86 S.Ct. 684, 15 L.Ed.2d 545 (1966), the Supreme Court set forth the test for obviousness:

Under § 103, the scope and content of the prior art are to be determined; differences between the prior art and the claims at issue are to be ascertained; and the level of ordinary skill in the pertinent art resolved. Against this background the obviousness or nonobviousness of the subject matter is determined. Such secondary considerations as commercial success, long felt but unsolved needs, failure of others, etc., might be utilized to give light to the circumstances surrounding the origin of the subject matter sought to be patented. *Id.*, at 17–18, 86 S.Ct. 684.

This test is a question of law based on underlying factual inquiries. *See, e.g., Daiichi Sankyo Co. v. Apotex, Inc.*, 501 F.3d 1254, 1256 (Fed.Cir.2007).

### 2. Priority

As a threshold matter, Katz argues that Norris is not prior art to the '707 patent. Fifth Third points out that Katz originally asserted that the '707 patent had a February 24, 1987 priority date. (Prieve Decl. ¶ 22; Prieve Expert Report at ¶ 58, Prieve Decl. Ex. 1.) If that date is correct, Norris would be prior art under 35 U.S.C. § 102(a).[2] In its opposition brief, Katz asserts that claim 24 is entitled to a priority date of at least July 10, 1985, based on an earlier application (serial number 753,-299 ("the '299 application") attached as Ex. 67 to the Goldstein Decl.) Fifth Third filed a motion to strike this contention because of this belated response. On July 28, 2009, this Court granted Fifth Third's motion to strike. As a result, Katz is not permitted to assert a priority date earlier than February 24, 1987. With this date in mind, Norris is prior art to claim 24 of the '707 patent.

### 3. Prior Art

Barger discloses a system for marketing merchandise or services capable of being demonstrated by telephone. For example, a customer might want to hear a portion of a recording before purchasing the same. The Barger system enables the customer to request that a demonstration of the desired recording be played over the telephone. Afterward, if the customer decides to purchase the recording, the customer can do so during the same telephone call.

In one embodiment, the customer is automatically connected to an operator, who elicits the customer's name, address, and account number, along with any desired demonstrations. If the customer desires a demonstration, the operator enters a demonstration call number into the data processing system, and causes the demonstration to be played. Once the demonstration has been played, the data processor returns the customer to an operator. The operator's display shows the data associated with the call, including historical data and credit verification data. The operator can enter an order desired by the customer into the data processor. The order entry, which includes the customer's name, address and account data or credit card data, is made through the operator's terminal to the data processor, which in turn, causes the order to be transferred to a magnetic storage means for processing. Before the order is accepted, the operator may request credit verification through the data processor or other device using the customer's credit card or account number.

In another embodiment of the system, the customer and data processor interact directly, with the customer entering all required information through his touchtone telephone, and the data processor

---

**2.** Norris is dated February 1986. Katz questions whether Norris was published on that date, but presents no evidence that suggests the date is incorrect.

communicating with the customer through prerecorded messages. To enter this mode of communication, the customer can either request that the operator connect him directly to the data processor, or can call a distinct telephone number that connects the caller to the data processor.

Norris is a short article describing new methods being used to promote products using interactive telephone/computer systems. The article discusses several different promotions. In one example, a consumer calls a toll-free telephone number and enters an account number. The computer voice provides the caller with the option of buying a new book by pressing buttons over the telephone.

In another example, a company called Dial Info developed a promotion for the Frito–Lay company in which consumers used telephones to play a computerized test that included three trivia questions. Each bag of potato chips from Frito–Lay carried several questions and answers to allow callers to prepare for the trivia questions. Callers that answered all three questions of the computerized test correctly received coupons for free potato chips. Those callers were also entered into a sweepstakes drawing for Hawaiian vacations and cash prizes.

### 4. Motivation to Combine

■ This Court first examines whether it is appropriate to combine these two references. The Supreme Court addressed the issue of combining prior art references in *KSR Int'l Co. v. Teleflex Inc.*, 550 U.S. 398, 127 S.Ct. 1727, 167 L.Ed.2d 705 (2007). The Court rejected a rigid application of the "teaching, suggestion, or motivation" test (TSM test), under which a patent claim is only proved obvious if "some motivation or suggestion to combine the prior art teachings" can be found in the prior art, the nature of the problem, or the knowledge of a person having ordinary skill in the art. Although the TSM test captures a "helpful insight," the Supreme Court held that it was error to apply the test as a rigid rule that limits the obviousness inquiry. *Id.* at 1741. Rather, "any need or problem known in the field of endeavor at the time of invention and addressed by the patent can provide a reason for combining the elements in the manner claimed." *Id.* at 1742. Still, it is "important to identify a reason that would have prompted a person of ordinary legal skill in the art to combine the elements as the new invention does." *Id.* at 1742.

Fifth Third argues that there are several reasons why a person of ordinary skill in the art would have been motivated to combine the teachings of Barger and Norris. First, both Norris and Barger are systems that use well-recognized and standard Customer Premises Equipment ("CPE") such as Voice Response Units, Databases, and TouchTone telephones for input in their well-known roles and with well-known techniques. (Prieve Decl. ¶ 25.) Second, both systems describe handling the same kinds of transactions. They allow callers to place orders and prevent fraudulent use. *Id.* Third, Fifth Third says that Norris would have benefited by incorporating the operators of Barger to handle non-touchtone callers who wanted to use the Norris applications. *Id.* Finally, Fifth Third argues that the combination of features would have yielded expected results. *Id.*

Katz has a number of responses to Fifth Third. First, Katz's expert, Dr. Brody, says that Fifth Third overstates both the significance of the similarities between Barger and Norris and the similarities themselves. For example, Dr. Brody says that Dr. Preive is relying only on the coupon prize system described in Norris. That system does not describe handling a

transaction that includes placing orders. (Dr. Brody Decl. ¶ 134.) Nor does that system discuss ways to prevent fraud. *Id.* Moreover, Dr. Brody argues that the mere fact that the references use similar equipment is irrelevant. Otherwise, Dr. Brody says it would be obvious to combine features of two different computer systems merely because they both use computers. (*Id.* at ¶ 133.)

Dr. Brody also says that the results of combining Barger and Norris would not have been predictable. (*Id.* at ¶ 135.) Moreover, Dr. Brody says that adding Norris's one time PIN (*i.e.* the consumable participation key required by claim 24) to Barger would have led to undesirable consequences. Specifically, the PIN would have limited a caller's ability to access the system. But Barger clearly wanted to encourage callers to access the system and purchase products. (*Id.* at ¶ 136.)

Similarly, Dr. Brody says that using Barger as a base for the Norris system would have led to undesirable consequences. Specifically, Dr. Brody says that the Norris system was designed for efficiency and cost effectiveness. But adding the "extensive operator interaction" from Barger would have undermined that design. (*Id.* at ¶ 137.)

In sum, Fifth Third has identified substantial similarities in the two references that certainly suggest that there is a motivation to combine. Contrary to Katz's argument, the fact that both references use similar components does suggest combining references. However, as Katz's computer example demonstrates, that factor is not dispositive. Both the degree of similarity and other factors must be considered. Katz has shown that some other factors weigh against finding a motivation to combine. Moreover, Fifth Third's arguments are not so compelling as to justify a summary judgment ruling. Thus, the issue of whether there is motivation to combine Barger and Norris must go to the jury. Accordingly, this Court DENIES Fifth Third's motion for summary judgment as it relates to whether claim 24 of the '707 patent is invalid as obvious.

### 5. Means Plus Function Limitations

Katz has also argued that Fifth Third has failed to show that the combination of Barger and Norris discloses several of claim 24's means plus function limitations. A review of Dr. Prieve's declaration shows that he fails to say whether the structures disclosed by the prior art are the same or equivalent to structures required by limitations 24[b], 24[d] and 24[e]. Although this appears to be an oversight that probably can be cured at trial, this Court cannot grant summary judgment without such testimony. Accordingly, this Court DENIES Fifth Third's motion for summary judgment of invalidity for this reason as well.

### D. Katz Failed to Comply with 35 U.S.C. § 287

Fifth Third argues that 35 U.S.C. § 287 limits the damages available to Katz. Under 35 U.S.C. § 287(a), a patentee making, offering for sale, or selling a patented article may not recover damages unless it has complied with the statute's marking requirements or until it has provided the infringer with actual notice of infringement.

 As a threshold matter, Katz argues that § 287 does not apply because no "patented articles" capable of being marked were used or sold under the patents. The accused infringer has the burden to show that there were patented articles.

> A patentee seeking recover[y] in an infringement action has the burden of showing that it and its licensees marked all patented articles sold. The party

claiming failure to mark, however, must show that the allegedly non-marked articles were, in fact, patented articles. In other words, [the alleged infringer] first has the burden to show that [the invention] is a patented article, and the burden then shifts to [the patentee] to show that [the invention] was marked.

*Unova Inc. v. Hewlett–Packard,* No. CV 02–3772(ER), 2006 WL 5434534, at *1 (C.D.Cal. Feb. 16, 2006); *see Laitram Corp. v. Hewlett–Packard Co., Inc.,* 806 F.Supp. 1294, 1297 (E.D.La.1992) (denying a motion for partial summary judgment limiting a patentee's damages for failure to mark because the accused infringer did not "prove first that the [inventions] were a 'patented article' within the meaning of the law.").

 goes on to argue that there were no such patented articles. Specifically, Katz says that: (1) it did not package or sell interactive call processing systems; (2) there is no showing that any Katz licensee has packaged or sold interactive call processing systems claimed by the patents; and (3) interactive call processing systems covered by the patents are made up of multiple products and services from different sources and are not a single patented article. In response, Fifth Third generally refers to licensees' telephone systems and their hardware components. Yet, Fifth Third never identifies specific systems that practice specific Katz patents. Absent that evidence, this Court is unable to find that § 287 applies at all. Accordingly, this Court DENIES Fifth Third's motion for summary judgment as it relates to notice under § 287. For purposes of this summary judgment decision, the Court need not address the parties' other arguments.

### E. Laches

Fifth Third also moves for summary judgment asking the Court to rule that laches applies. Katz's own motion for summary judgment asks the Court to issue precisely the opposite ruling, that there is no laches. This Court addresses Fifth Third's request below in the section that addresses Katz's summary judgment motion.

### F. No Willful Infringement

 Fifth Third's motion for summary judgment also argues that even if Fifth Third is eventually found to infringe, it is not liable for willful infringement. The Federal Circuit discussed the elements of willful infringement in *In re Seagate,* 497 F.3d 1360 (Fed.Cir.2007) (*en banc*). Under *Seagate,* willful infringement can only be shown by "... clear and convincing evidence that the infringer acted despite an objectively high likelihood that its actions constituted infringement of a valid patent...." *Id.* at 1371. If this first objective test is met, the patent owner must also "demonstrate that this objectively-defined risk (determined by the record developed in the infringement proceeding) was either known or so obvious that it should have been known to the accused infringer." *Id.*

 Fifth Third's motion argues that Katz cannot show "objective recklessness." In support of that position, Fifth Third advances four arguments. First, Fifth Third says that it has substantial non-infringement arguments as to each of the remaining asserted claims. Second, Fifth Third says that it also has substantial invalidity arguments as shown by the Court's June 19, 2008 and August 4, 2008 summary judgment orders, which invalidated a number of claims Katz asserted against Fifth Third. Third, Fifth Third relies on this Court's decision in *Verizon Cal. Inc. v. Ronald A. Katz Tech. Licensing, L.P.,* No. 01–CV–09871, 2003 WL 25761597 (C.D.Cal. Dec. 02, 2003), which

held that part of Katz's patent portfolio was either invalid or non-infringed. Finally, Fifth Third points out that a substantial portion of Katz's patent portfolio is currently under reexamination.

In response, Katz argues that there is a triable issue of fact as to whether Fifth Third's potential infringement was willful based on the totality of the circumstances. *See Church & Dwight Co. v. Abbott Labs.,* 2008 U.S. Dist. LEXIS 49588, *3–4 (D.N.J. June 23, 2008) (citing *Liquid Dynamics Corp. v. Vaughan Co., Inc.,* 449 F.3d 1209, 1225 (Fed.Cir.2006)) (quotation and internal citations omitted).

Many of Fifth Third's arguments miss the point. First, to the extent that this Court has rejected non-infringement arguments in this summary judgment decision, this Court cannot say all these arguments are all so strong that they disprove objective recklessness. Second, the *Verizon's* decision on non-infringement is not relevant to Fifth Third. There is no indication that the infringement allegations are the same. Finally, this Court is unwilling to fashion a bright line rule that there cannot be willfulness whenever a patent is the subject of reexamination.

Nonetheless, Fifth Third correctly points out that this Court's earlier invalidity rulings show that an objective party (namely this Court) has found that specific asserted claims are invalid. Moreover, this decision also finds that Fifth Third does not infringe a number of claims. To the extent that Fifth Third has prevailed on either its non-infringement or invalidity arguments, this Court concludes that Katz's willfulness allegations fail the objective prong of *Seagate*. Thus, even if these decisions are eventually reversed, they nonetheless show that Fifth Third was not objectively reckless with respect to those claims where the Court ruled in favor of Fifth Third. Accordingly, this Court GRANTS IN PART AND DENIES IN PART Fifth Third's motion for summary judgment with respect to willfulness.

## IV. KATZ'S CROSS MOTION FOR SUMMARY JUDGMENT

Katz's motion for summary judgment asks the Court to find that Fifth Third infringes claims 1 and 3 of the '285 patent and claims 31, 32, 39, 43, 44 and 50 of the '863 patent. In addition, Katz asks the Court to dismiss the affirmative defenses of laches, equitable estoppel and prosecution laches. In contrast, Fifth Third's motion for summary judgment argues that the Court should find that laches exists as a matter of law.

### A. Infringement

Katz's motion seeks to establish that the accused Fifth Third systems satisfy every limitation of claims 1 and 3 of the '285 patent and claims 31, 32, 39, 43, 44 and 50 of the '863 patent.

In response, Fifth Third raises numerous arguments, many of doubtful merit. This Court addressed some these arguments (but not all) above when it ruled on Fifth Third's motion for summary judgment of non-infringement. For the purposes of this motion, this Court does not need to address every argument that Fifth Third and Katz raise here. The Court's earlier rulings show that there are factual issues related to the possible infringement of all the claims at issue.

Specifically, this Court found that there were factual issues with respect to the issues of: 1) receiving DNIS signals (*see* section III(A)(2)), and 2) multiple formats (*see* section III(A)(5)). Accordingly, this Court DENIES Katz's motion for summary judgment of infringement with respect to claims 1 and 3 of the '285 patent and claims 31, 32, 39, 43, 44 and 50 of the '863 patent.

## B. Laches

### 1. Legal Standard—Laches

Laches occurs when a plaintiff unreasonably delays in bringing suit on its patent. The defense bars a patentee from recovering damages accrued prior to the filing of lawsuit. *A.C. Aukerman Co. v. R.L. Chaides Constr. Co.,* 960 F.2d 1020, 1041 (Fed.Cir.1992) (*en banc*). The elements of laches are "(1) the plaintiff delayed filing suit for an unreasonable and inexcusable length of time from the time the plaintiff knew or reasonably should have known of its claim against the defendant, and (2) the delay operated to the prejudice or injury of the defendant." *Aukerman,* 960 F.2d at 1032. Laches must be established by a preponderance of the evidence. *Id.* at 1045.

### 2. Unreasonable Delay

Katz asks the Court to find that any delay in filing suit against the defendants was not "unreasonable and inexcusable." In support of this argument Katz relies on 1) the licensing discussions Katz had with the defendants; 2) licensing discussions Katz had with other entities; and 3) the multiple lawsuits Katz brought against other entities.

There is a rebuttable presumption that laches applies if the delay in bringing a lawsuit is over six years. *Id.* at 1035. The plaintiff can puncture the presumption with introduction of evidence sufficient to raise a genuine dispute as to either delay or prejudice. *Hemstreet v. Computer Entry Sys. Corp.,* 972 F.2d 1290, 1293 (Fed. Cir.1992). Courts have recognized both litigation and negotiations with the accused as an excuse for delay. *Aukerman,* 960 F.2d at 1033 (citations omitted). Once the presumption is burst, the defendant must affirmatively prove both elements of laches. *Hemstreet,* 972 F.2d at 1293 (citing to *Aukerman,* 960 F.2d at 1032).

Fifth Third argues that Katz should have known of Fifth Third's potential infringement by 1997. In support of that position, Fifth Third points to a Call Center Showcase Tour brochure. (Ex. 4 to Bennett Decl.) The brochure listed tours on April 10, 1997 for both Fifth Third Bank and GE Capital Card Services. Next to that entry is a handwritten note, "PICI." Katz's Rule 30(b)(6) witness, Brian Rivette, admits that the note, in his handwriting, refers to "potentially infringing call interactive," but argues that the note corresponded to GE Capital Card Services, not Fifth Third Bank. (Rivette Dep. at p. 70, attached Ex. 20 to Bennett Decl.) The issue is clearly one for the jury to determine. This Court must draw inferences against each moving party. For the purposes of Katz's motion for summary judgment, this Court will assume that the laches period began in 1997, when Mr. Rivette might have been aware of Fifth Third's potentially infringing system. Since this date is over six years prior to the filing of the current lawsuit, this means that that there is a presumption that laches applies. However, for the purposes of Fifth Third's motion, the Court will not make this assumption. Rather, the Court will assume that Katz had notice of Fifth Third's system in 2000 when it began investigating Fifth Third. (*See* Correspondence to Fifth Third Bank attached as Ex. 32 to Goldstein Decl.) Since the current lawsuit was filed on June 8, 2007, the presumption of laches applies under this scenario as well.

The parties dispute whether Katz can rely on the three excuses it has identified. First, Fifth Third argues that Katz fails to assert that the discussions between Fifth Third and Katz were continuous and bilaterally progressing. Early laches decisions state that, for license negotiations to serve as an excuse, the negotiation must "ordinarily be continuous and bilaterally progressing, with a fair chance of success, so

as to justify significant delays." *A.C. Auk-erman Co. v. Miller Formless Co., Inc.,* 693 F.2d 697, 700 (7th Cir.1982); *see Continental Coatings Corp. v. Metco, Inc.,* 464 F.2d 1375, 1377–78 (7th Cir.1972). Thus, Fifth Third says that Katz cannot meet its burden. Yet, Katz has attached a large series of emails and letters from its negotiations with Fifth Third. (Ex. 32 to Goldstein Decl.) The correspondence occurred from November 16, 2000 until April 2, 2007. Fifth Third has failed to explain why the frequent communication is not continuous and bilateral. The fact that Katz did not use that phrase in characterizing its arguments does not show that there is no excuse.

 Second, Fifth Third argues that Katz cannot rely on negotiations with third parties to excuse it from filing suit against Fifth Third. In support of that position, Fifth Third cites to several district court cases. *See Comcast Cable Comm. Corp. v. Finisar Corp.,* 2008 WL 170672, at *6 (N.D.Cal. Jan. 17, 2008) ("While licensing negotiations has been recognized as a justifiable excuse in the laches context, such negotiations must have been between the patentee and alleged infringer." (citing to *Aukerman,* 960 F.2d at 1038)); *see also Abbott Diabetes Care Inc. v. Roche Diag. Corp.,* 2007 WL 1241928, at *5 (N.D.Cal. Apr. 27, 2007) ("While progressing efforts to resolve a patent dispute through negotiation can justify delay in bringing suit regarding that dispute, unrelated negotiations with unrelated parties are not a sufficient basis for justifying the delay shown here.") Katz's reply brief does not address this authority. Accordingly, this Court finds that Katz's negotiations with other parties do not serve to excuse its delay.

Third, Fifth Third also challenges Katz's litigation excuse. Katz had sued numerous third parties during the relevant period: 1) AT & T (1997–2000), 2) Verizon (2001–2004) and 3) the Round B defendants commencing in 2006. Fifth Third argues that these lawsuits do not excuse Katz because Katz did not inform Fifth Third Bank of the litigations and its intent to sue Fifth Third after the litigations were over. This Court rejects this argument. Both *Hemstreet,* 972 F.2d at 1293 and *Aukerman,* 960 F.2d at 1039, make it clear that "the equities may or may not require that the plaintiff communicate its reasons for delay to the defendant."

Accordingly, this Court finds that Katz has raised genuine issues of material fact with respect to two excuses: 1) its negotiations with Fifth Third, and 2) its lawsuits with third parties. This finding has several effects. First, the presumption of laches is burst and Fifth Third has the burden to prove laches. Second, since Fifth Third has failed to prove that Katz's delay in bringing suit was unreasonable, this Court will not rule that laches applies as a matter of law and DENIES Fifth Third's motion for summary judgment. Finally, since Katz has failed to prove that its delay was reasonable as a matter of law, this Court cannot dismiss the defendants' laches defense based on this argument.

### 3. Prejudice

The second element of laches is prejudice. Katz's motion for summary judgment also argues that Fifth Third has failed to provide any evidence of prejudice. Fifth Third alleges both evidentiary and economic prejudice.

#### a. Evidentiary Prejudice

Fifth Third argues that because of Katz's delay, several witnesses were unable to recall critical facts. For example, Fifth Third says that Katz and Rivette could not recall when they first learned of Fifth Third, its interactive call processing and early investigation into potential infringement. Moreover, Fifth Third says

that information related to call volumes was lost for the years Katz claims infringement. (Lindemann Decl. ¶ 12.) Since Katz's damages analysis relies on this information, Fifth Third says that there is prejudice.

In response, Katz argues that Fifth Third has not demonstrated that its ability to present a defense has been prejudiced by the evidence that has been supposedly lost. *See Meyers v. Brooks Shoe, Inc.,* 912 F.2d 1459, 1463 (Fed.Cir.1990) (overruled on other grounds by *A.C. Aukerman,* 960 F.2d at 1020) (affidavit that documents were lost and employees left company was insufficient without showing that former employees' testimony was important to defense or why they could not be subpoenaed if needed). With respect to the Katz and Rivette testimony, this Court agrees. Fifth Third never explains why this evidence is important to its case or how its case has been prejudiced. However, Fifth Third has provided more specific details with respect to lost call volume information. Since Katz relies on this information for its damages case, this information is clearly relevant. Moreover, Katz argues otherwise. Accordingly, this Court finds that Fifth Third has presented a factual issue with respect to evidentiary prejudice.

### b. Economic Prejudice

 Fifth Third argues that it also suffered economic prejudice. Specifically, Fifth Third says that it made material changes to its call center operations. These investments "may not" have been made had Katz filed suit earlier.

In response, Katz argues that the defendants have failed to link the defendants' decision to make new investments with Katz's failure to promptly sue. In *Meyers,* the Federal Circuit stated that to prevail on laches, the defendants "must show that the prejudice they suffered resulted from the delay." *Id.* at 1463 n. 1. In *Meyers,* none of the defendants submitted evidence

that they curtailed design and development of the accused products in response to suit once it was actually filed. *Id.* at 1463. The evidence also failed to show that the defendants were concerned that their products might infringe the patents or that they would have acted differently had they been sued earlier. *Id.* As a result, the Federal Circuit reversed the district court's decision to grant the defendants' summary judgment on laches.

The sole evidence Fifth Third presents is the conclusory declaration of Andrea Lindemann, a Vice President of unknown responsibilities at Fifth Third Bank. Without any other discussion Ms. Lindemann says, "[h]ad Fifth Third been notified of the alleged infringement at an earlier date, Fifth Third would have implemented less costly non-infringing alternatives." (Lindeman Decl. ¶ 13.) However, Ms. Lindemann's declaration is woefully deficient. It never explains why she is in a position to testify about what Fifth Third would have done. Thus, it does not have the foundation required by Fed. R. Civ. Proc. 56(e)(1). Ms. Lindemann never explains why she believes that a less costly non-infringing alternative is possible, or identifies such alternative. Ms. Lindemann does not explain why Fifth Third did not implement these alternatives once Fifth Third starting receiving licensing requests in 2000. In sum, this Court finds that Ms. Lindeman's conclusory allegations are not sufficient to present a factual issue. *See National Steel Corp. v. Golden Eagle Ins. Co.,* 121 F.3d 496, 502 (9th Cir.1997) ("Conclusory allegations of collusion, without factual support, are insufficient to defeat summary judgment)." Accordingly, this Court finds that Fifth Third has failed to present substantial evidence on economic prejudice.

Based on the foregoing, this Court finds that Fifth Third has presented substantial

evidence of both unreasonably delay and evidentiary prejudice. Accordingly, this Court DENIES Katz's motion for summary judgment as to Fifth Third's affirmative defense of laches.

## C. Equitable Estoppel

 Equitable estoppel comes into play when a patent owner represents to an infringer, expressly or implicitly, that he will not enforce his patent against the infringer's business, and the infringer relies on that representation. The Federal Circuit has stated that there are three elements to equitable estoppel: a) the patentee, through misleading conduct, leads the alleged infringer to reasonably infer that the patentee does not intend to enforce its patent against the alleged infringer; b) the alleged infringer relies on that conduct; and c) due to its reliance, the alleged infringer will be materially prejudiced if the patentee is allowed to proceed with its claim. *See A.C. Aukerman*, 960 F.2d at 1028. Equitable estoppel must be shown by a preponderance of the evidence. *Id.* at 1046.

Katz argues that Fifth Third does not have any evidence to show an essential element of estoppel, misleading conduct. In response, Fifth Third argues that Katz's conduct was misleading in three ways. First, Fifth Third identifies Katz's failure to identify Fifth Third's allegedly infringing services. Second, Fifth Third identifies Katz's failure to provide sufficient notice of infringement despite years of correspondence. Third, Fifth Third identifies Katz's unjustified refusal to provide additional information without a confidentiality agreement.

 This Court rejects Fifth Third's arguments for two reasons. First, Fifth Third has merely identified silence or inaction. However, the law says that silence or inaction cannot be the basis for misleading conduct unless it is combined with other facts. *See Hemstreet*, 972 F.2d at 1295 ("equitable estoppel may, in some instances, be based upon a misleading silence, mere silence must be accompanied by some other factor which indicates that the silence was sufficiently misleading as to amount to bad faith." (internal citations omitted)); *see also ABB Robotics, Inc. v. GMFanuc Robotics Corp.*, 52 F.3d 1062, 1064 (Fed.Cir.1995) ("Misleading action by the patentee may be silence, if such silence is accompanied by some other factor indicating that the silence was sufficiently misleading to amount to bad faith."); *see also Aukerman*, 960 F.2d at 1042 ("inaction must be combined with other facts"). Thus, the type of misleading conduct Fifth Third identifies cannot be the predicate to an equitable estoppel defense.

Second, all the evidence suggests that Katz would continue to pursue the Fifth Third defendants. Katz sent a series of letters over the course of many years aimed at persuading each defendant to take a license. The letters described Katz's litigations. This conduct plainly suggests that Katz was serially pursuing different targets, and each defendant's turn would come. Accordingly, this Court GRANTS Katz's motion for summary judgment as it relates to Fifth Third's affirmative defense of equitable estoppel.

## D. Prosecution Laches

 summary judgment motion asks this Court to dismiss Fifth Third's affirmative defense of prosecution laches. The equitable doctrine of prosecution laches may bar enforcement of patent claims issuing after an unreasonable and unexplained delay in prosecution, even though the applicant complied with pertinent statutes and rules. *Symbol Techs., Inc. v. Lemelson Med., Educ., & Research Found.*, 277 F.3d 1361, 1363 (Fed.Cir.2002) (hereinafter "*Symbol I*").

### 1. Legal Standard—Prosecution Laches

In *Symbol I*, the Federal Circuit did not issue any "firm guidelines" for determining when laches exists. *Symbol Techs., Inc. v. Lemelson Med., Educ., & Research Found.*, 422 F.3d 1378, 1385 (Fed.Cir.2005) (hereinafter "*Symbol II*"). Both parties agree that prosecution laches requires an unreasonable and unexplained delay in the prosecution of a patent. However, they disagree about whether intervening adverse rights is also a requisite element. Katz argues that intervening rights is an essential element of the defense, while Fifth Third argues that it is simply one factor to be considered in a totality of circumstances determination.

In support of its position, Katz cites to *Crown Cork & Seal Co. v. Ferdinand Gutmann Co.*, 304 U.S. 159, 167–68, 58 S.Ct. 842, 82 L.Ed. 1265 (1938) and *General Talking Pictures Corp. v. Western Electric Co.*, 304 U.S. 175, 183, 58 S.Ct. 849, 82 L.Ed. 1273 (1938) and argues that these Supreme Court decisions hold that prosecution laches does not apply in the absence of intervening rights. Katz also points out that the Federal Circuit relied, in part, on these decisions to revive the doctrine of prosecution laches. *Symbol I*, 277 F.3d at 1365. Therefore, Katz concludes that the intervening rights requirement remains intact. Finally, Katz points out that this Court arrived at the same conclusion in an earlier decision. *See Verizon California Inc. v. Ronald A. Katz Technology Licensing, L.P.*, No. 01–CV9871 (RGK)(RCx), 2003 WL 25761597, at *22, 2003 U.S. Dist. LEXIS 23553, at *62–63 (C.D.Cal. Dec. 2, 2003) ("it appears that proof of 'intervening adverse public rights' is a requisite element of a successful prosecution laches defense").

In response, Fifth Third argues that although "intervening public or private rights" could be a factor in evaluating the totality of circumstances, the Federal Circuit has never required the presence of intervening rights. *See Symbol II*, 422 F.3d at 1382 (citing intervening rights as additional factual considerations); *see also In re Bogese II*, 303 F.3d 1362, 1367 (Fed. Cir.2002) (affirming Board of Patent Appeal's forfeiture of patent based upon prosecution laches without requirement of intervening rights); *see also Reiffin v. Microsoft Corp.*, 270 F.Supp.2d 1132, 1154 (N.D.Cal.2003) ("the demonstration of unreasonable and unexplained delay [is] the sole element of the defense of prosecution laches.")

■ After reviewing the decisions, this Court concludes that Katz is correct and that the Supreme Court has addressed the issue of intervening rights. In both *Crown Cork* and *General Talking Pictures*, the Supreme Court holds that prosecution laches does not apply absent intervening adverse rights. *Crown Cork*, 304 U.S. at 167, 58 S.Ct. 842 ("It is clear that, in the absence of intervening adverse rights, the decision in *Webster Electric Co. v. Splitdorf Co., supra*, [264 U.S. 463, 44 S.Ct. 342, 68 L.Ed. 792 (1924)] does not mean that an excuse must be shown for a lapse of more than two years in presenting the divisional application"); *General Talking Pictures*, 304 U.S. at 183, 58 S.Ct. 849 ("In the absence of intervening adverse rights for more than two years prior to the continuation applications, they were in time.") Although the precedent is old, it is controlling. Therefore, this Court likewise finds that to prevail on a claim of prosecution laches, the defendant must prove both 1) unreasonable and unexplained delay, and 2) intervening adverse rights.

### 2. Unreasonable Delay

■ Katz's summary judgment motion argues that Fifth Third does not have evidence of unreasonable delay. However,

Fifth Third offers the expert report of Professor Wagner that compares the pendency of Katz's patents against other patents prosecuted during the same time period. The report shows that almost all the asserted patents have priority pendencies that were longer than 95% of other patents. These delays are certainly significant and might provide a basis for finding prosecution laches.

The question revolves on whether Katz can provide a reasonable explanation for that delay. Katz's motion argues that it was diligent and hastened the issue of patents by having at least one patent issue between 1988 and 2004. Moreover, Katz points out that it filed terminal disclaimers in connection with nearly all of its patents. *See Chiron Corp. v. Genentech, Inc.,* 268 F.Supp.2d 1139, 1143 (E.D.Cal.2002) (filing of a terminal disclaimer "may weigh strongly in favor of finding the delay is reasonable"). However, Fifth Third challenges the reasonableness of Katz's explanations. With all of the evidence in mind, this Court finds that there is a genuine issue of material fact with respect to the issue of unreasonable and unexplained delay.

### 3. Intervening Adverse Rights

Fifth Third did not present any evidence on intervening rights. Since this Court has found that such evidence is necessary for a defense of prosecution laches, this Court GRANTS Katz's motion for summary judgment as it relates to Fifth Third's affirmative defense of prosecution laches.

## V. SUMMARY

### A. Fifth Third's Motion for Summary Judgment

#### 1. Non–Infringement
##### a. Receiving DNIS

This Court finds that there is a factual issue as to whether the accused systems received DNIS. Accordingly, this Court DENIES Fifth Third's motion for summary judgment of non-infringement as it relates to claims 57, 62 and 63 of the '120 patent, claims 1 and 3 of the '285 patent, and claims 31, 32, 39, 43, 44 and 50 of the '863 patent.

##### b. Using DNIS

Although this Court finds that a VDN number is not DNIS, this Court also finds that Katz has presented evidence that the accused systems used DNIS to identify a dialed number. Accordingly, this Court DENIES Fifth Third's motion for summary judgment of non-infringement as it relates to claims 57, 62 and 63 of the '120 patent and claims 31, 32, 39, 43, 44 and 50 of the '863 patent.

##### c. Using DNIS to Select a Format

Although this Court finds that a VDN number is not DNIS, this Court also finds that Katz has presented evidence that the accused systems used DNIS to select a format. Accordingly, this Court DENIES Fifth Third's motion for summary judgment of non-infringement as it relates to claims 1 and 3 of the '285 patent and claims 31, 32, 39, 43, 44 and 50 of the '863 patent.

##### d. Multiple Formats

This Court finds that there is a factual issue as to whether the accused systems call flows correspond to multiple formats. Accordingly, this Court DENIES Fifth Third's motion for summary judgment of non-infringement as it relates to claims 1 and 3 of the '285 patent and claims 31, 32, 39, 43, 44 and 50 of the '863 patent.

##### e. Claims 69 and 87 of the '707 Patent

This Court finds that the checks numbers do not specify a limit on use in the stop payment application. Accordingly, this Court GRANTS Fifth Third's motion for summary judgment of non-infringement as it relates to claims 69 and 86 of

the '707 patent and the stop payment application.

This Court finds that the accused Jeanie card number is not a participation number that specifies a limit on use. Therefore, this Court GRANTS Fifth Third's motion for summary judgment of infringement as it relates to claims 69 and 86 of the '707 patent and the transfer funds applications that ran on the Conversant and DVRS system.

**f. Claims 46 and 51 of the '309 Patent**

This Court finds that a reasonable jury could find that the stop payment application restricts the extent of access a caller may have to parts of the stop payment application. However, this Court finds that the stop payment application does not use a consumable participation key to limit stored data. Accordingly, this Court GRANTS Fifth Third's motion for summary judgment of non-infringement as it relates to claims 46 and 51 of the '309 patent and the stop payment application.

This Court finds that a reasonable jury may find that the card activation application restricts the extent of access a caller may have to parts of the stop payment application. However, this Court finds that the card activation application does not use a consumable participation key to limit stored data. Accordingly, this Court GRANTS Fifth Third's motion for summary judgment of non-infringement as it relates to claims 46 and 51 of the '309 patent and the stop payment application.

**g. Customer Number and Personal Identification**

This Court finds that the last four digits of a social security number is not personal identification data. As a result, this Court finds that the combination of an account number and the last four digits of the caller's social security number do not infringe the claims 31, 32, 39, 43, 44 and 50 of the '863 patent and this Court GRANTS Fifth Third's summary judgment motion of non-infringement with respect to this issue.

This Court finds that Fifth Third has failed to meet its burden of proof and show that the combination of a social security number and PIN number do not infringe claims 31, 32 39, 43, 44 and 50 of the '863 patent. Accordingly, this Court DENIES Fifth Third's motion for summary judgment on this issue.

**h. Imposed Condition**

This Court rejects the claim construction that Fifth Third advanced for "imposed condition" in claim 1 of the '285 patent. Accordingly, this Court DENIES Fifth Third's motion for summary judgment on this issue.

**2. Induced and Contributory Infringement**

This Court finds that Katz has failed to present evidence that any of Fifth Third's customers directly infringed the asserted claims. Moreover, this Court rejects Katz's due process arguments. Accordingly, this Court GRANTS Fifth Third's motion for summary judgment as it relates to induced and contributory infringement.

**3. Obviousness**

This Court finds that there is a factual issue with respect to whether there is a motivation to combine the Barger and Norris references. Accordingly, this Court DENIES Fifth Third's motion for summary judgment of invalidity with respect to claim 24 of the '707 patent.

**4. 35 U.S.C. § 287**

This Court finds that Fifth Third has failed to prove that Katz or its licensees sold any articles that were covered by the asserted patents (and thus required marking). Accordingly, this Court DENIES Fifth Third's motion for summary judg-

ment as it relates to limiting damages under 35 U.S.C. § 287.

### 5. Laches

This Court finds that there is a factual issue with respect to the reasonableness of Katz's delay. Accordingly, this Court DENIES Fifth Third's motion for summary judgment as it relates to laches.

### 6. Willfulness

To the extent that Fifth Third has prevailed on either its non-infringement or invalidity arguments on summary judgment, this Court finds that Katz's willfulness allegations fail the objective prong of *Seagate* for the affected claims. Accordingly, this Court GRANTS Fifth Third's motion for summary judgment on willfulness with respect to the non-infringed/invalid claims. In all other respects, Fifth Third's motion is DENIED.

## B. Katz's Cross Motion for Summary Judgment

### 1. Infringement

This Court finds that there are factual issues with respect to the issues of 1) receiving DNIS signals (*see* section III(A)(2)), and 2) multiple formats (*see* section III(A)(5)). Accordingly, this Court DENIES Katz's motion for summary judgment of infringement with respect to claims 1 and 3 of the '285 patent and claims 31, 32, 39, 43, 44 and 50 of the '863 patent.

### 2. Laches

This Court finds that there are triable issues of fact with respect to both unreasonable delay and evidentiary prejudice. Accordingly, this Court DENIES Katz's motion for summary judgment as it relates to Fifth Third's laches defense.

### 3. Equitable Estoppel

This Court finds that Fifth Third has failed to present any evidence of misleading conduct. Accordingly this Court GRANTS Katz's motion for summary judgment as it relates to Fifth Third's equitable estoppel defense.

### 4. Prosecution History Laches

This Court finds that one element of prosecution history estoppel is intervening rights. Since Fifth Third has failed to present any evidence of intervening rights, this Court GRANTS Katz's motion for summary judgment as it relates to Fifth Third's prosecution history laches defense.

**IT IS SO ORDERED.**